85 180 | 87 75
85 180 | J90 274
85 180 | 92 58
85 180 | 94 420
85 180 | 106 91
85 180 | 108 583
85 180 | 125 76
85 180 | 139 282

J. H. McDermott, Administrator, Appellee, v. Iowa Falls & Sioux City Railway Company, Appellant.*

1. **Master and Servant:** NEGLIGENCE: PERSONAL INJURY: CONTRACT. The plaintiff's intestate was a brakeman on the defendant's railroad. In the train on which he was employed at the time of the accident in question, were several coal cars, having end boards on hinges, and so made that they could be laid inward on the floor, or raised and fastened in a position perpendicular to it. In attempting to pass over one of these end boards, which, in this instance, lay at an angle of about thirty degrees with the floor, because of coal, snow and ice, which, it was alleged, had negligently been permitted to accumulate in the car, the plaintiff's intestate slipped and fell between the cars, and was killed. In support of the claim that the deceased was guilty of negligence contributing to the injury, the defendant sought to introduce in evidence an agreement, between another company than the defendant and the deceased, to the effect that the latter would diligently examine all cars upon which he might be called to work, and report to the proper officers all defects, and would not work on he same until such defects had been remedied. *Held*, that said agreement, not being made with the defendant, and not purporting to be one of its rules, the evidence was properly excluded.

2. ———: ———: EMPLOYEE'S KNOWLEDGE OF DEFECTS. There being no evidence that the deceased knew of the condition of the end board in question until he approached it at the time of the accident, *held*, that whether he was then justified in incurring unusual risk in attempting to pass over it while it was in the position above described, would depend upon the haste required in the performance of the duty in which he was then engaged, and that the court properly refused to instruct the jury that the defendant would not be liable if the end board was not defective, and could have been raised and fastened.

3. ———: ———: PLEADING: INSTRUCTIONS TO JURY. The plaintiff's petition, assuming that the signal given to stop the train when the deceased fell was seen by the engineer, charged the latter with negligence for not stopping the train when the signal was given. The evidence showed that an order to stop the train at the town of D., where the accident occurred, was not communicated to the engineer, and that it was customary when passing through a station to control the train between the whistling post and the station with the brakes.

*The original opinion in this cause was withdrawn from the files of the clerk's office by the court, and is, therefore, not published. It will be found in 47 N. W. Rep. 1037.—Reporter.

*Held*, that an instruction which permitted the jury to find the defendant guilty of negligence, if the engineer did not *see* the signal to stop, or failed to use all the appliances at hand to stop the train when he felt the brakes, was erroneous.

4. **Practice in Supreme Court:** ARGUMENT OF NEW QUESTIONS ON REHEARING. The granting of a rehearing in a cause in the supreme court does not, without express leave of court, authorize the re-submission of the cause upon a different record, nor an argument of questions not presented upon the first submission.

5. ———: COSTS. When the appellant's abstract in a cause consisted largely of a printed transcript of the record, and upon a rehearing he filed two partial abstracts of the record, and four printed arguments, one of the latter being in large part a mere repetition of portions of another, *held*, that the appellant would be allowed costs only for its argument upon the first submission, and for part of its argument upon the rehearing, but nothing for the remainder of its printing.

*Appeal from Hardin District Court.*—Hon. D. R. Hindman, Judge.

Monday, May 16, 1892.

Action to recover damages alleged to have been caused by negligence on the part of the defendant, which resulted in the death of J. J. McDermott, the plaintiff's intestate. There was a trial by jury, and a verdict and judgment in favor of the plaintiff. The defendant appeals.—*Reversed*.

*J. F. Duncombe* and *W. J. Knight*, for appellant.

*Burns & Sullivan, Ranck & Wade* and *Albroook & Hardin*, for appellee.

Robinson, C. J.—On the fifteenth day of January, 1888, J. J. McDermott was, in the employment of the defendant as brakeman on a freight train. In the morning of that day his train was in part made up in the yard at Ft. Dodge, and contained eight empty coal cars, a loaded box car and a caboose; the caboose being at the rear end of the train and the box car next to it. The coal cars appeared to have been coupled together; and McDermott coupled the front one of these to the tender, and the rear end to the box car. The side

boards of each coal car were about twenty-two inches in height from the floor. The end boards were hinged to the floor, and so made that they could be laid inward on the floor, or raised and fastened in a position perpendicular to it. The floor extended about eighteen inches outside the end boards. At the time in question the front end board of the coal car next to the box car was neither up nor down, but rested on coal, snow or other material at an angle with the floor of about thirty degrees, and was covered with ice and snow. The morning was intensely cold, and there was much snow on the ground, and some on the cars. A short time before noon the train left Ft. Dodge for Waterloo under orders to run to Webster City without stopping at a station. A stop was made at the Carbon Y for a railway crossing, and, while there, an order was received by the conductor to stop at Duncombe, a station between Ft. Dodge and Webster City, to take out cars. The order was communicated to McDermott, but not to the engineer. When the engine reached the whistling post at Duncombe, the whistle was blown, and McDermott and a fellow-brakeman named Harrington left the caboose to set brakes. Harrington set the brake on the front platform of the caboose, and gave the signal to stop. McDermott went upon the box car, and there set a brake; Harrington passed him on that car, and proceeded to set the brake on the front end of the coal car, the end board of which has been described. While he was at that brake McDermott came from the box car, and, in attempting to pass to the second coal car, stepped on the inclined end board, and slid therefrom on the north side of the drawbar, between the two cars, onto the track between the rails. Harrington immediately gave what is described as the "violent signal to stop." Whether the signal was seen by the engineer at that time, is a matter of dispute; but the train was not stopped until it had run

a distance of from one thousand to fifteen hundred feet after McDermott fell. When it was stopped, McDermott was found dead, under the front end of the caboose, in such a position as to indicate that one coal car and the box car had passed over him, and that he had been caught by the front truck of the caboose.

The petition charges that the accident resulted from negligence on the part of employees of the defendant, as follows: *First.* In permitting the end-board in question to remain in the position described; *second*, in placing the car in the train without using care to ascertain its condition, and without properly adjusting the end-board; *third*, in running a train through a station at which it was ordered to stop; *fourth*, in refusing to stop or slacken the speed of the train when signaled to do so before the injury was received.

It is the theory of the plaintiff, also shown by the petition, that McDermott was unable to see the ice on the end-board, in consequence of snow which had fallen thereon the night before; that he used due precaution to avoid danger; and that after he fell beneath the train he was dragged some distance before receiving fatal injuries; and that such injuries would have been avoided had the engineer promptly obeyed the signal given him to stop.

It is claimed by the defendant, in effect, that when it employed the decedent it had adopted a rule, which was then in force, that it would not employ a minor as brakeman; that he was informed of that rule when he was employed, but fraudulently represented that he was twenty-one years old, and that the defendant believed such representation to be true, and was deceived by it; and that, had the decedent possessed the experience, judgment and care which he would have had if he had been of the age represented, the accident would not have occurred, The defendant fur-

ther claims that the negligence of the decedent contributed to the accident; that when he was employed he agreed in writing that he would diligently examine all cars, engines, machinery and appliances on or about which he might be called upon to work, and would promptly report to the proper officers all defects, and would not work on or about the same until such defects should be remedied, and that if he worked in violation of the agreement it should be at his own risk; that the condition of the end-gate was a defect, within the meaning of that agreement, known to decedent, for which defendant is not liable. The reply alleged that the contract was made with the Illinois Central Railroad Company, and not with the defendant, and that any assignment or transfer thereof was made without the knowledge or consent of the decedent.

I. The agreement referred to in the answer is as follows:

"It is further understood that employees entering or remaining in the company's service agree that before

1. MASTER and servant: negligence: personal injury: contract.

they attempt to make couplings or uncouple cars while in its employ they will examine and see that the cars or engines to be uncoupled or coupled, the pins, links, drawheads and other appliances connected therewith, are in good, safe condition, and are so loaded that such work may be safely done; and further agree to diligently examine all cars, engines, machinery and appliances with which they may be called upon to work, and promptly report to the proper officer all defects therein, and not to work on or about the same until such defects are remedied; and, if they do so, it shall be at their own risk exclusively. To evidence the understanding herein expressed, an agreement has been prepared which is hereto annexed, and which employees will be required to sign.

[Signed]    Edward T. Jeffery,
General Superintendent."

"Waterloo, May 21, 1887.

"I, the undersigned, being employed as brakeman upon the Illinois Central Railroad, hereby acknowledge that I have been made acquainted with the contents of the foregoing statement, signed by Edward T. Jeffery, general superintendent of said company, and understand the same, and in consideration of my employment by said company I hereby agree to assume all the risks of the services of said company as set forth in said statement, and to obey the requirements thereof, and all the rules now made, or that may be made, by said company for the government of its employees, and that I will save said company harmless of all liability for injury that may come to me because of such risk, or because I have not obeyed the direction of said statement, or any of the rules now or hereafter made for the government of its employees, as aforesaid. I am twenty-one years old.

"J. McDermott."

The appellant complains that the court refused to permit the agreement to be offered in evidence. We are unable to determine from the record whether it was introduced or not, the last statement in the abstract in regard to it appearing to show that it was read in the hearing of the jury; but, as counsel on both sides argue the matter as though the instrument had been excluded, we will so treat it. When it was offered in evidence it had been shown that the decedent was not eighteen years of age at the time of his death. The plaintiff objected to the instrument on the ground that it had not been shown that decedent signed it; that he was a minor when it was signed; that it was made with the Illinois Central Railroad Company, and not with the defendant; and that it was immaterial. The defendant contends that the reply admitted the making of the instrument. The reply contained a general denial, in addition to the allegation already referred to, that the

contract was made with the Illinois Central Railroad Company. A general denial would have been implied by law, in the absence of a reply, and the one pleaded was without effect, unless to negative any claim that the affirmative matter pleaded could be treated as an admission for all the purposes of the case. We are of the opinion that the reply falls within the rule announced in *Day v. Insurance Co.*, 75 Iowa, 700, and *Stanbrough v. Daniels*, 77 Iowa, 565, and that the making of the agreement was not admitted.

A further objection to it was that it did not purport to have been entered into with the defendant. It is claimed, however, that the defendant should have been permitted to prove that the instrument embodied one of its rules, of which the decedent had knowledge, and the case of *Sedgwick v. Illinois Central Railroad Co.*, 73 Iowa, 160, is cited as sustaining the claim. But in that case the contract was between Oaks, the employee, and the company which relied upon it, and it was admitted, not because it was valid in all respects as a contract, but as showing the manner in which he was expected to perform the duties of his employment; that it was dangerous and forbidden to attempt to do certain work in a manner specified, and that he had notice of those facts. The ground on which the contract was admitted in that case does not exist in this. The instrument in question was not binding on the decedent, so far as the record shows, for the reason that if it was made by the decedent, it was not made with the defendant, and did not purport to be one of its rules. If it embodied such a rule that fact might have been shown, if it was also shown that the decedent had knowledge of it. But the evidence offered was not limited to showing such facts, but included an alleged agreement with another company, not in the form of a rule, but in its nature prejudicial to the plaintiff. Nothing in the instrument shows that the rule signed by the general superintend-

ent was a rule of the defendant, or that the decedent
knew that defendant had such a rule. The record
justifies the presumption that an important, if not the
chief, purpose of the defendant in offering the instru-
ment was to have that part which it is claimed the
decedent signed go to the jury. In our opinion, no
sufficient foundation for the introduction of the instru-
ment had been laid, and it was therefore immaterial,
and properly rejected.

II. The court refused an instruction asked by the
defendant, as follows:    "The undisputed evidence in
this case shows that the end board from
2. ——: ——:  which the decedent slipped and fell was
Employee's
knowledge of  constructed with hinges, so that it could
defects.
be laid down on the floor of the car when
it was not in place to form an end to the coal car.
There is no evidence before you showing that this end
board was in any way defective, or that it had not
proper and suitable fastenings to hold it in place in an
upright position, or that it could not readily and easily
be put in such a position by the decedent, and fastened
there by the use of such fastenings. Under these cir-
cumstances, I charge you that the defendant is not
liable because the decedent slipped on said end board
while it was in a slanting position and fell under the
cars, and on this issue your verdict should be for the
defendant."

It is insisted by the appellant that the decedent
must be presumed to have had notice of the position
and condition of the end board in ample time to have
adjusted it properly before the accident occurred. The
evidence fails to show that the decedent had any knowl-
edge of the end board before he approached it at the
time of the accident. He coupled the end of the coal
car farthest from the end board to the box car, but the
coal cars were coupled together, and it does not appear
that he had ever passed over them, nor that he was

near enough to them to know the condition of the end board before the train left Ft. Dodge. The box car concealed it from his view while he was in the caboose, and when the whistle announced that the train was near the station it was his duty to act with promptness in setting brakes. Whether he was justified in incurring unusual risk in attempting to pass over the end board while it was in the position described would depend upon the haste required in stopping the train, and upon conditions which the instruction under consideration entirely ignores. See *Hosic v. C., R. I. & P. R'y Co.*, 75 Iowa, 686. If it be said the evidence shows that the reason for stopping the train had been communicated to the decedent, and that he knew there was no emergency which required him to expose himself to the danger incurred in passing over the end board before raising it, the answer is that the instruction is not based upon that hypothesis, but embodies the proposition that the defendant would not be liable for the accident if the end board was not defective, and could have been easily raised and fastened. We do not think that is the law, but that the defendant may have been liable for failure to have an end board, perfect in all respects, properly adjusted and fastened. As to its liability in this case on the evidence submitted, we express no opinion.

III. The eighth paragraph of the charge to the jury is as follows: "If you find from a preponderance of the evidence in this case that the deceased fell from a coal car of the defendant's train at the time, and in the manner and form, and under the circumstances, as alleged in the plaintiff's petition, and that the cars passed over him without committing the alleged injury, and that he was not so injured until the caboose struck him, and that he was then crushed to death by the caboose, and that the defendant's engineer, who was running and had

3. ___:___:
pleading: instructions to jury.

charge of the engine that drew said train, was signaled to and notified to stop the train after the deceased had fallen therefrom, and that by the exercise of ordinary care such engineer could and should have seen such signal and stopped the train in time to have avoided such injury to the deceased, but neglected so to do, then your verdict should be for the plaintiff; and this would be true even though you should find from the evidence that the deceased was negligent in going upon said car, or in passing over the same, and that such negligence on his part was the immediate cause of his falling therefrom. But if the engineer was in his proper place on the engine discharging his duty as such when the whistle for Duncombe station was sounded, understanding that he was not to stop at that station, and thereafter, and while the train was passing through that station, he looked to the rear end of the train as often and as fully as could reasonably be expected under the circumstances, for signals, and if, as soon as the engineer saw a signal to stop given, or felt the brakes, and knew there was anything wrong, he immediately used all the appliances at his command to stop the train, and continued so to do until the train stopped, he cannot be said to have been negligent for not sooner stopping the train, nor can the defendant be held liable for not sooner stopping it, even though by sooner stopping it injury to deceased might have been prevented; and in such case it is immaterial whether the deceased was killed when he first fell from the train, or was killed by being dragged after he fell.''

The only wrong charged against the engineer in the pleadings is that he ''negligently continued to operate his engine, and refused to slacken or stop said train after the signal to stop was given, and that the injury to the decedent was the result of the refusal of the engineer to stop or slacken the speed of said train when signaled so to do before said injury;'' ''that

when the decedent fell from the car the engineer was at once signaled to stop the train; but that he negligently and recklessly refused to do so, and continued to run and operate the said engine and train;'' ''that the engineer, if he had obeyed the signal given him to stop the train, or if he had used due and ordinary diligence to stop said train, could have stopped the same before injuries to the deceased, but that he negligently refused to obey the same until he had run the said train more than twelve hundred feet from the place where the deceased fell.'' The appellant complains of that part of the paragraph of the charge quoted which made it liable for the failure of the engineer to see the signal to stop, if by the use of ordinary care he should and could have seen it, on the ground that negligence on the part of the engineer in not seeing the signal is not charged in the petition. That complaint seems to be well founded. The wrong alleged is in not stopping the train after the signal was given, and in refusing to do so. The petition does not expressly allege, but assumes, that the engineer knew of the signal.

A more serious defect, however, in the paragraph of the charge under consideration is that which reads as follows: ''If, as soon as the engineer saw a signal to stop given, or felt the brakes, or knew there was anything wrong, he immediately used all the appliances at his command to stop the train, and continued so to do until the train stopped, he cannot be said to have been negligent for not sooner stopping the train.'' It is admitted by the engineer that, as the train approached Duncombe, he felt the brakes. He stated that when the train reached the whistling post, about eighty rods west of the station, it was running at the rate of fifteen miles an hour; that as it approached the station he felt the brakes; that at that time steam was or had been shut off, but no other effort to stop the train was then made; that when he felt the brakes he looked back

towards the rear end of the train, but could see nothing excepting smoke; that about the time he was passing the depot he looked back again, and, the smoke having cleared, he saw the signals when the engine was near the last switch; that he at once answered the signal, reversed the engine, put on steam, and opened the sand lever; that the train was stopped as soon as it could be done after the signal was seen. Under the portion of the charge last quoted, the jury might have found that the engineer used due care to see the signals, and obeyed them with all possible diligence, as soon as seen, and yet they might have felt compelled to find for the plaintiff because of the admitted fact that the engineer did not proceed to stop the train as soon as he felt the brakes. But the evidence shows without conflict that he did not know that the order to run to Webster City without stopping at stations had been changed, nor that the train was to stop at Duncombe. It is also shown that it was customary in passing through a station to control the train between the whistling post and the station with the brakes. It thus appears that the application of the brakes was not notice to the engineer to stop the train, and that he was not negligent when he felt them in not immediately using the means at his command to stop the train. It is said the jury were not told that the engineer would be negligent if he did not stop the train when he felt the brakes, but that is the converse proposition of the one stated, and would necessarily be inferred by the jury. The charge contains nothing to rebut the presumption that they so understood it.

IV. Numerous questions are discussed by counsel which we do not find it necessary to determine. Many

4. PRACTICE in supreme court: argument of new questions on rehearing.

of them depend upon the evidence, and may not arise on another trial. This is the second submission of the case, a rehearing having been ordered after the

filing of an opinion on the first submission. Some of the questions we are asked to determine are now presented for the first time. The rights of the parties were fixed by the record as it appeared on the first submission. After the opinion was filed the parties could not amend the record, and supply defects by means of an amendment to the abstract nor otherwise. A petition for rehearing is designed to call the attention of this court to some error of law or of fact which the petitioner believes has been committed in deciding the case as submitted, to the end that, if an error has been committed by the court, it may be corrected, and not to afford him an opportunity to present the case on a different record or to make an argument on questions not before presented, or, in other words, to present a different case from that first determined. See *Cramer v. Burlington*, 45 Iowa, 630; *Hintrager v. Hennessy*, 46 Iowa, 604; *Mann v. S. C. & P. R'y Co.*, Id. 643; *Nixon v. Downey*, 49 Iowa, 169; *Simplot v. Dubuque*, Id. 633; *Wachendorf v. Lancaster*, 61 Iowa, 510. It is said that a different rule should apply when a rehearing has been granted. Without deciding that we would not in any case authorize a record to be amended, or a new question to be argued on rehearing, we may say that such cases would, at least, be exceptional. No order of that kind was made in this case. There is nothing in it to exempt it from the operation of the general rules, although the manner of its presentation has been unusual.

V. We have rarely known a case to be presented in so confused and unsatisfactory a manner as this has been.

5. ——: costs.    It was said in the opinion for which this is a substitute that costs could not be allowed the appellant for printing an abstract, for the reason that the document so entitled was largely a printed transcript. On rehearing, the appellant filed two partial abstracts of the record and four arguments. A large part of one of the arguments is a mere repetition

of portions of another. The appellee objects to such practice, and upon sufficient ground. *Webster County v. Hutchinson*, 60 Iowa, 726. The appellant will be allowed the costs of its argument on the first submission, and forty dollars of its argument on rehearing, and will recover nothing for the remainder of its printing.

For the errors contained in the eighth paragraph of its charge to the jury, the judgment of the district court is REVERSED.