OSCAR RUFF DRUG COMPANY, Appellee, v. WESTERN IOWA
COMPANY, Appellant.

**LANDLORD AND TENANT:** Negligence in Making Repairs.  A land-
lord who contracts with his tenant in possession to make specific
repairs on the leased premises, in consideration of an increased
rental after the repairs are completed, and makes the repairs by his
own contractor, and in such a negligent manner as to cause the build-
ing to collapse, is liable to the tenant for the resulting damage to
the tenant's stock of goods, despite the fact that the tenant, during
the time the building was being repaired, was in possession under a
lease which provided that *"in no case whatever shall lessor * * *
be liable to the lessee * * * for any injury * * * to any * * *prop-
erty on the premises * * ˙ *  and all property * * * on the
premises shall be at the sole risk of the lessee."*

**CONTRACTS:** Construction—Sweeping Exemption from Liability.  One
who contracts for sweeping exemptions from liability does not nec-
essarily escape liability for wrongful or negligent acts which the
parties manifestly did not have in mind when the contract was
executed.

**NEGLIGENCE:** Assumption of Risk—Tenant Remaining in Repaired
Building.  A tenant who remains in possession of premises, pending
repairs thereon by the landlord, does not assume the risk attending
the collapse of the building when the record demonstrates that the
collapse of the building was not owing to the dilapidated condition
thereof, but to the negligent manner in which the repairs were
carried on.

**APPEAL AND ERROR:** Harmless Error—Erroneous Direction as to
Duty.  Instructions to the effect that a plaintiff was under duty
to exercise *reasonable* care not to overload a building, when the
duty was *absolute*, are harmless, when the record very clearly shows
that the damage was not caused by overloading.

**EVIDENCE:** Opinion Evidence—Collapse of Building.  An expert in
the construction of buildings is competent to express an opinion as
to the effect on a building of repairs made in a proven manner.

*Appeal from Woodbury District Court.*—JOHN W. ANDERSON,
Judge.

FEBRUARY 15, 1921.

REHEARING DENIED JUNE 25, 1921.

ACTION by the lessee of a building to recover damages of the lessor, for the value of a stock of merchandise consisting of drugs, paints, and oils, which, it is charged, was totally destroyed as the result of the negligent manner in which the lessor caused certain repairs and alterations to be made upon the leased premises. There was a verdict in favor of plaintiff for $71,-532.74 and interest. Defendant appeals from the judgment entered thereon. The material facts are stated in the opinion.—*Affirmed.*

*E. M. Corbett, Jepson & Struble,* and *Shull, Stilwill & Shull,* for appellant.

*O. D. Nickle* and *Henderson, Fribourg & Hatfield,* for appellee.

STEVENS, J.—I. Plaintiff is a corporation, organized under the laws of the state of Iowa, of which Oscar Ruff is president; and on and prior to June 29, 1918, it occupied the west store-room of a four-story building, situated on the corner of Fourth and Douglas Streets, Sioux City, Iowa, together with the basement under the same, a portion of the second, and all of the fourth floor of said building, as lessees of the Western Iowa Company, a corporation, appellant herein, and conducted a wholesale and retail drug, paint, and oil business therein. The east and remaining storeroom of said building was occupied by the Chain Grocery Store, the two rooms being separated by a brick wall extending the entire length of the building, except about 20 feet at the front, and from the floor of the basement to the second story. Both rooms were 25x90 feet, fronted south on Fourth Street, and were known as Nos. 401 and 403. The entrance from Fourth Street was in the center of the building. The three lower stories were constructed of brick, and the fourth had a mansard roof of wood and tin. Plaintiff's lease, which was entered into on December 1, 1915, by its terms expired on April 30, 1918. Several years before the lease was entered into, the floor of the east

*1. LANDLORD AND TENANT: negligence in making repairs.*

or Chain storeroom was lowered about 12 inches. On June 1, 1918, plaintiff and defendant entered into a contract, by the terms of which defendant agreed to make certain alterations and repairs in plaintiff's storeroom, among others, not necessary to mention, the following:

"A. The ground floor of said store is to be lowered to or near a level with the sidewalk grade of the sidewalk on Fourth Street, in front of said building.

"B. A new front is to be put in said storeroom, which front shall be similar to that now in the store occupied by the Chain Grocery & Meat Company, at 403 Fourth Street, Sioux City, Iowa; the front on the Douglas Street side of said storeroom is to be rebuilt and an entryway to said store is to be put in, same to be as nearly like the entrance on Fourth Street as the construction of the building will permit."

This contract further provided that, in consideration of the agreements and provisions thereof, as soon as the stipulated repairs and alterations were completed, the parties would enter into a new lease for a term of six years, commencing May 1, 1918, which should "be in substantially the same form as the lease of said premises heretofore existing between the parties hereto and above referred to." By the terms of said contract, plaintiff agreed to pay an additional $100 per month rent for the premises under the new lease. In pursuance of said arrangement, Melvin J. Smith, president of the defendant company, at once made arrangements with F. X. Babue & Sons, building contractors in Sioux City, to make the contemplated alterations and improvements in said building, specifying that the work should be done under the supervision of Joseph Awe, an employee of defendant corporation. Babue, in accordance with his agreement, furnished the workmen necessary for the job and purchased the material to be used in the building. Work was commenced about June 19, 1918, and continued until June 29th, when, shortly after the noon hour, the brick wall between the two storerooms gave way, and the building collapsed, and a fire ensued, totally destroying plaintiff's stock of merchandise and fixtures. The building, as stated, was constructed of brick and mortar, and was erected in 1872. The bricks used in the structure were what are commonly known as sand bricks, and it ap-

pears that the mortar had become rotten, so as not to hold the bricks together. The center wall supported one end of the joists in both storerooms upon which the floors of the first and second stories rested. The wall in the basement was originally 21½ to 22 inches wide, and above the basement, 13 inches. It is claimed that the collapse of the building was due to the careless and negligent manner in which the work of lowering the floor in plaintiff's storeroom was performed. The joists were cottonwood, the ends of which were inserted in the wall; and, instead of removing them, they were sawed off and lowered, so as to rest upon a single course of brick, built up from the foundation. To lower the joists, it was necessary to remove brick from the single course to the depth of about 12 inches. It is claimed that the wall was so weakened by the removal of the brick to permit the floors to be lowered, together with the removal of some of the ends of the joists that were sawed off, and to which iron anchors imbedded in the wall were attached, by channeling into the wall, and by the partial destruction of a header course of brick by the use of a cold-chisel, as to cause it to give way, and the building to fall.

It is also claimed that the defendant was negligent in failing to cause the building to be properly inspected before the work was begun, and in failing to provide proper support and protection to the wall while it was in progress. But, as appellant does not claim that the question of defendant's negligence should not have been submitted to the jury, we have no occasion to go into further details of the matters relied upon to constitute negligence.

The particular negligence charged in plaintiff's petition and submitted to the jury, as stated in the court's instruction, was:

"The act of negligence charged against the defendant, and which plaintiff claims was the direct and proximate cause of the collapse of the building and resulting damage, is that the defendant was negligent in attempting to lower the storeroom floor, and in lowering the same, in the manner in which said work was done and attempted to be done, in the old, worn, and ruinous condition in which the walls of said building were at the time said work was done, which condition was known, or should have been known, by the defendant at the time. And this is the only act

of negligence on the part of defendant which you are to consider in your determination of this case.''

In addition to a general denial and the admission of formal matters alleged in plaintiff's petition, the defendant, for answer, pleaded specially that the collapse of the building and the resulting fire occurred without negligence upon its part, and averred that the work of making alterations and repairs was done by competent workmen, in a skillful manner. The defendant also alleged that, by the terms and provisions of the written lease, entered into on December 1, 1915, the defendant was fully relieved and exempted from liability for the damages claimed; and that plaintiff, during the work of remodeling and repairing the building, and without knowledge of the defendant or of Babue & Sons, negligently caused large quantities of paint, oils, lead, and other goods and commodities to be removed from the basement and placed upon the upper floors of the building in such manner as to overload the same; and that same contributed to the collapse of the said building. The portions of the lease referred to above and set out in defendant's answer are as follows:

''And in no case whatever shall lessor (or those having estate in the premises) be liable to the lessee, or any other person, for any injury, loss or damage to any person or property on the premises, nor for the use or abuse of water, nor for leakage from the roof, nor for bursting or leakage of pipes in any part of the building nor for any damage whatever which may be caused by an overflow from sewers; nor for any nuisance made or suffered on the premises; * * * and all property of any kind that may be on the premises shall be at the sole risk of the lessee, or those claiming through or under it; and that the lessor, its successors or assigns or its agents, may during the said term, at reasonable times, enter to view the said premises or to show the property and buildings to persons wishing to lease or buy, and may remove placards and signs not approved and affixed as herein provided, and may make repairs and alterations, if it should elect so to do, and may show the said premises and building to others, and at any time within three months next before the expiration of the said term may affix to any suitable part of the said premises a notice for letting or selling the said

premises or building, and keep the same so affixed without hindrance or molestation; * * * ''

Aside from errors which appellant claims occurred during the trial, and which will be noted later, the principal contentions of defendant upon this appeal are:

1.    That plaintiff's occupancy of the building, both at the time when the alterations were contracted for and when made, was subject to the express agreement quoted above, that in no event whatever should the defendant be liable to plaintiff for injury, loss, or damage to its property on the premises, and that same, while kept thereon, was at the sole risk of plaintiff.

2.    That plaintiff assumed the risk of damage to its property, and failed to exercise the care required of it under the provisions of its lease and the circumstances shown.

The familiar general rules governing the relation and liability of a landlord to his tenant for damages growing out of defects in the leased premises, or out of the negligence of the landlord in making repairs, such as that the occupancy of the tenant is at his own risk as to unconcealed defects, and that it is the duty of the landlord, in attempting to make repairs or alterations upon leased premises, to do so in a reasonably prudent and careful manner, and that he is liable for damages proximately resulting from his failure to do so, are not controverted. While counsel for appellee do not concede that plaintiff's occupancy of the building at the time of the collapse was under the lease that expired April 30th, the argument upon both sides proceeds largely upon this assumption. When, however, it comes to the question of the interpretation to be placed upon, and the legal effect to be accorded to, the so-called exemption clause of the lease quoted above, the views of counsel are widely divergent.

It is the contention of appellant that this clause is all inclusive, and that, unless an exception as to negligence is to be implied, it is conclusive against the defendant; whereas it is the claim of counsel for appellee that this clause waives the right to claim damages only for those things which might naturally and which would ordinarily follow from the occupation of a building, and for which the landlord would not be liable, under the ordinary rules pertaining to the relationship of landlord and tenant, and to such as might have been reasonably anticipated to

occur, and that damages such as resulted from the attempt to make repairs and alterations in the building were not within the contemplation of the parties.

It should be noted, at the very outset, whether given particular significance in argument by counsel or not, that the repairs were being made in pursuance of the separate agreement of June 1st, which specifically recognized that the former lease had expired, and provided that, when the repairs were completed, a new lease—the terms of which were no more definitely stated than that they would be substantially the same as the terms of the former lease—would be entered into for a term of six years, commencing May 1, 1918, and that said agreement further designated the exact repairs to be made, and recited that it was to be done in consideration of the parties' entering into a new lease for the term stated, at an increased rental of $100 per month. It is true that provisions in leases exempting the landlord from liability for damages to the property of the tenant caused by the negligence of the former have been upheld, to some extent, by this court and the courts of other jurisdictions. *Griswold v. Illinois Cent. R. Co.*, 90 Iowa 265; *Hartford F. Ins. Co. v. Chicago, M. & St. P. R. Co.*, 175 U. S. 91; *Kennedy Bros. v. Iowa St. Ins. Co.*, 119 Iowa 29; *Gerlach v. Grain Shippers M. F. Ins. Assn.*, 156 Iowa 333; *City of New York Ins. Co. v. Chicago, B. & Q. R. Co.*, 159 Iowa 129; *Roeh v. Business Men's Prot. Assn.*, 164 Iowa 199; *Peek v. North Staffordshire R. Co.*, 10 H. L. Cases *473; *Fera v. Child*, 115 Mass. 32; *Tuttle Co. v. Phipps*, 219 Mass. 474; *Checkley v. Illinois Cent. R. Co.*, 257 Ill. 491.

A careful analysis of the court's decision in each of the cited cases reveals that the clause construed either specifically or definitely exempted the landlord from liability for damages resulting from certain designated causes, or else the lease involved was a lease of a certain portion of the right of way of a railroad for a nominal consideration, for the erection of an elevator or other building of similar character and use. In the latter cases, the exemption provided was from liability for damages resulting from fires caused by the negligence of the company's servants. In none of these cases was the question of the liability of the landlord for damages caused by its negligence in making

repairs upon leased premises involved.  The clause in the lease involved in this controversy is couched in general terms, and does not specifically exempt the defendant from liability for the negligent acts of the landlord.  The defendant, it is true, reserved the right in the lease to enter upon the premises and make repairs; but the repairs in question were not being made under the terms of the lease, but in pursuance and under the terms of the separate agreement of June 1st, and were being made in consideration of a new lease, to be entered into between the parties for a term of six years, at an additional rental of $100 per month. The obligations to make the improvements did not arise out of the lease, but out of the provisions of the separate agreement. Practically all, if not all, of the courts of this country hold that it is the duty of the landlord, in making improvements upon leased premises, although the work is done gratuitously by him, to exercise reasonable care to see to it that no injury results to the occupying tenant.  If, therefore, repairs are made by the landlord in a careless and negligent manner, he is liable to the tenant for such damages as are the proximate result of such negligence; and the tenant does not assume the risk of the landlord's negligence.  *Mortrude v. Martin,* 185 Iowa 1319, 1320; *Glickauf v. Mauer,* 75 Ill. 289 (20 Am. Rep. 238); *Gill v. Middleton,* 105 Mass. 477 (7 Am. Rep. 548); *Gregor v. Cady,* 82 Me. 131 (17 Am. St. 466); *Michael & Bro. v. Billings Ptg. Co.,* 150 Ky. 253 (150 S. W. 77); *Mann v. Fuller,* 63 Kan. 664 (66 Pac. 627); *Upham v. Head,* 74 Kan. 17 (85 Pac. 1017); *Galvin v. Beals,* 187 Mass. 250 (72 N. E. 969); *Vollrath v. Stevens,* 199 Mo. App. 5 (202 S. W. 283); *Tarnogurski v. Rzepski,* 252 Pa. 507 (97 Atl. 697); *Mumby v. Bowden,* 25 Fla. 454 (6 So. 453); *Covington Co. v. Masonic Temple Co.,* 176 Ky. 729 (197 S. W. 420); *Bains v. Dank,* 199 Ala. 250 (74 So. 341).

Exemption clauses in various leases somewhat less sweeping and comprehensive in their general terms have been held by the courts of other jurisdictions, particularly by the New York courts, not to operate as a waiver of the right of the tenant to recover from a landlord damages resulting from the making of repairs in a negligent manner. *Lewis Co. v. Metropolitan Realty Co.,* 189 N. Y. 534 (82 N. E. 1126); *Rolfe v. Tufts,* 216 Mass. 563 (104 N. E. 341; *Smith v. Faxon,* 156 Mass. 589 (31 N. E.

687) ; *Unterberg v. Israel,* 103 Misc. Rep. 675 (171 N. Y. Supp. 133) ; *Second U. C. R. Corp. v. Hare,* 165 N. Y. Supp. 371; *Sacher v. Murray Lenox L. Co.,* 171 N. Y. Supp. 216 ; *Worthington v. Parker,* 11 Daly (N. Y.) 545.

In *Mortrude v. Martin,* 185 Iowa 1319, plaintiff sought to recover damages for injuries received by him, caused by the falling of plaster from the ceiling of a store in which he was employed. One of the defenses urged was that the lease under which his employer occupied the premises as a tenant contained a clause giving the landlord permission to build additional stories to the building, and waiving claims for damages occasioned thereby. We held that this provision of the lease waived only such damages as might result from the proper construction of the building, and not such as might result from negligence in the construction thereof.

It will be remembered that the repairs in question were being made by workmen furnished by a local contractor engaged by defendant, under the direct supervision and contract of a foreman also in defendant's employ. No one connected with the plaintiff company had anything whatever to do therewith, or a right to exercise control over the workmen or to direct the manner in which the work should be performed.

It is true that the so-called exemption clause of the lease is stated in broad and sweeping general terms, but we cannot conceive that the waiver of damages resulting to the lessee from the negligence of the lessor, in making specific repairs upon the building in pursuance of a separate, independent, contract, resting upon a new consideration, could have been within the contemplation of the parties at the time the lease was entered into. No such repairs were in the mind of either party. It is our conclusion upon this point that, although it be conceded that plaintiff was occupying the premises, at the time the building collapsed, under the terms and provisions of the lease that expired April 1st, he did not, by the provisions quoted, waive his right to claim damages for the total destruction of his stock of merchandise, as the result of the negligence of the defendant in repairing, altering, and reconstructing a portion of the build-

2. CONTRACTS: construction: sweeping exemption from liability.

ing occupied by plaintiff, and, in a measure, at his instance and request.

II.   Much evidence was introduced by plaintiff tending to show that the building, at the time the work of making repairs commenced, was in a dilapidated and ruinous condition; that the brick out of which it was constructed was of poor quality; that the mortar had lost its strength, and was easily crumbled, and had little or no adhesive force; and that the work was begun without inspection of the center wall of the building, for the purpose of ascertaining whether the repairs could be safely made.

3. NEGLIGENCE: assumption of risk: tenant remaining in repaired building.

It is contended by counsel for appellant that the charge of negligence, submitted to the jury, was so inseparably connected with the ruinous and unsafe condition of the building that, aside from the exemption clause in the lease, plaintiff cannot recover, for the reason that he was bound to make such examination of the premises as was necessary to determine whether they were safe for occupancy; and that defendant is not liable for injuries resulting from such defects as were known to plaintiff, or would have been discovered by such inspection as it was his duty to make; also, that, if the issue of negligence submitted to the jury was not so inseparably based upon the unsafe condition of the building as to preclude recovery, the evidence conclusively shows that plaintiff assumed the risk, and failed to exercise due care, under the circumstances.   The contention of counsel fails to distinguish between injuries resulting from unconcealed defects in the building and injuries resulting from the omission of the landlord to perform some duty owed to the tenant, or from affirmative acts of negligence committed by him in making repairs upon the leased premises.   The evidence does not disclose that the collapse of the building was due to its inherent weakness or to defects reasonably discoverable upon proper inspection thereof, but sufficient evidence was introduced that such collapse was due to the negligent manner in which the work of lowering the floor in the storeroom occupied by plaintiff was done, to require submission of the question to the jury. Plaintiff, by remaining with his stock of goods in the building, assumed no risk for injuries caused by the negligence of defend-

ant in lowering the floor and making the other stipulated alterations in the building. It did appear from the testimony of one Raven, an architect who was called as a witness for plaintiff, that, before the contract for the repairs and alterations of the building was entered into, he told Ruff that the building was in such a condition that extensive repairs or alterations could not be safely made thereon. Ruff did not communicate this conversation to the defendant. He testified, however, that the conversation was a casual one; that it had entirely gone from his mind; and that, so far as he knew, Raven was not speaking from knowledge obtained from an inspection of the building, and he paid little attention to what he said.

The case does not, in our opinion, come within the rule announced in *Dresser v. Bates,* 250 Fed. 525, and other cases cited upon this point in the brief of appellant. Plaintiff's cause of action was not based upon the ruinous condition of the building, due to its age and deterioration, but upon the negligent manner in which the work was attempted to be done, and was done. Clearly, there was no assumption of the risk by the plaintiff, and we need not refer particularly to the large number of authorities cited by counsel.

III. We have carefully analyzed appellant's exceptions to the ninth paragraph of the court's charge to the jury, and reach the conclusion that same is without merit. The exceptions to Paragraph 11 are likewise without substantial merit. The lease provided that, during the term, the premises should not be overloaded, damaged, or defaced by the lessor. It appears from the record that a quantity of merchandise was removed by plaintiff from the basement to the fourth floor of the building just before the work of making the alterations commenced. Evidence was introduced to the effect that the merchandise was removed upon the orders of defendant's superintendent, so as to give more room to the workmen employed in lowering the floor. This was, however, denied by the witnesses for defendant. It is also shown that a considerable quantity of paper had been recently removed from the fourth floor, and that the merchandise taken from the basement did not exceed 2,000 or 3,000

4. APPEAL AND ERROR: harmless error: erroneous direction as to duty.

pounds in weight, which was much less than the weight of the rolls of paper referred to.

The court, in Paragraph 11, instructed the jury that it was the duty of plaintiff to use reasonable and ordinary care not to permit anything to be done which would overload the premises, in view of the condition of the building and the alterations and remodeling contemplated, so far as the same were known to the plaintiff. Counsel for appellant contends that the instruction was erroneous, for the reason that it should have stated that plaintiff was absolutely bound not to overload the premises, and that it was its duty to determine, at its peril, whether this was being done. Whether the instruction was correct as stated, or whether it should have been framed upon the theory of counsel, we think no prejudice could have resulted to defendant on account of the form in which it was given. The evidence wholly fails to show that the collapse of the building was due to overloading. As stated, the weight of merchandise on the fourth floor was, according to record, appreciably less than it customarily was.

IV. A witness who properly qualified as an expert on building construction was asked, in a hypothetical question which assumed certain facts shown in evidence with reference to the

5. EVIDENCE: opinion evidence: collapse of building.

condition of the building and the manner in which the work of lowering the floor was done, to give his opinion as to what would be the effect upon the center wall of doing the work in the manner assumed. He answered that he would expect it to cause the wall to collapse. The objection to the question was that it invaded the province of the jury, and asked the witness to pass upon the ultimate facts. The objection is not well taken. The witness had a right to express an opinion based upon the facts offered in evidence and assumed in the hypothetical question as to the effect upon the building of doing the work in the manner stated. We need not review the authorities cited, but the question comes reasonably within the rule of *Morgan v. Fremont County,* 92 Iowa 644; *Kitteringham v. Sioux City & Pac. R. Co.,* 62 Iowa 285; *Brier v. Chicago, R. I. & P. R. Co.,* 183 Iowa 1212.

Some other minor questions are dismissed by counsel for appellant; but it is impossible, in an opinion of permissible

length, to review all of the points discussed by counsel in argument, or to point out either their inapplicability to the case at bar or their want of controlling importance. On account of the large amount involved, this is a case of unusual importance. Aided by the careful manner in which the record was prepared, and the exhaustive treatment of the propositions relied upon for reversal by counsel in their respective briefs, we have given the entire.record the fullest possible consideration.

To give the effect urged by appellant to the provisions of the lease quoted above would, under the circumstances shown, it seems to us, be to place an unwarrantable interpretation thereon, and by implication or construction to add something thereto which manifestly was not within the contemplation of the parties at the time the instrument was executed. Since we fail to discover grounds for reversal in the record, the judgment of the court below is—*Affirmed*.

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.