S. A. MEEKER et ux., Appellees, v. DONALD SHULL et ux., Appellants.

No. 46630.

FEBRUARY 6, 1945.

Louis J. Kehoe, of Washington, for appellants.

Harold F. McLeran and McCoid & McCoid, all of Mount Pleasant, for appellees.

MILLER, J.—Plaintiffs' petition asserted: On November 9, 1942, the defendants entered into a written lease for plaintiffs' farm of one hundred sixteen acres for one year from March 1, 1943, for an annual rental of $1,392; by mutual agreement, the lease was renewed for an additional year commencing March 1, 1944; plaintiffs own the farm and defendants are in possession of it; defendants violated various provisions of the lease by bringing mortgaged equipment on the farm, by not farming the premises in a good farm-like manner, plowed five or six acres of stock ground which was supposed to be seeded in oats, plowed up twenty acres of permanent pasture without plaintiffs' consent, committed waste, pulled out eight rods of fence, broke off a post of the corn crib, sold and removed corn raised on the farm without plaintiffs' consent and without having paid the rent; in accordance with Paragraph VIII of the lease, plaintiffs elected to declare the lease null and void and, on November 30, 1943, served on plaintiffs a notice of termination of the lease and a demand for possession of the farm but defendants failed and refused to surrender possession to plaintiffs. The prayer was that defendants be removed from the farm and that plaintiffs be put in possession thereof.

The written lease, attached to the petition, set forth twelve paragraphs of conditions and agreements between the parties. Paragraph I was as follows:

"The second party agrees not to bring mortgaged property on the premises, agrees not to pasture new seeding, and covenants to farm said premises in a good farmlike manner, and to raise the greatest amount of grain thereon the nature of the soil and the season will permit, and further to break up and improve as much of the waste land as may be in condition to plow, but not to plow pasture or hay land without consent of first party. That he will commit no waste and suffer no injuries to be done to the premises * * *."

Paragraph VIII provided as follows:

"If the second party shall fail to cultivate said premises

as herein agreed or shall fail to keep any of the covenants contained in this lease or shall assign this lease or underlet said premises or any part thereof, then this lease shall, at the election of the first party, be null and void, and the first party or his legal representative shall have the right to take possession of said premises, using such force as may be necessary with or without process of law, and all damages growing out of the failure to perform any of the covenants of this lease, shall be added to and become a part of the rent, recoverable as rent.''

The written notice served on defendants contained the following provisions:

''That in violation of the terms of the said lease you have plowed up approximately twenty acres of permanent pasture; that you have failed to farm the said premises in a farm-like manner; that you have committed waste upon the said premises; that you have sold off grain raised on the said premises during the term of this lease before the cash rent had been paid all without the consent of the said S. A. Meeker and Bessie O. Meeker.

''That by the terms of the said lease upon any of the conditions of the said lease being broken, that the said lease then became cancelled and terminated and these Plaintiffs hereby elect to cancel and terminate the said lease all as provided for by the conditions set out therein. * * *

''You are further notified unless you surrender the possession of the said premises to these Plaintiffs within three days from the complete service of this notice that these Plaintiffs will take such action as is provided by law to recover the possession of the said premises.''

Defendants' answer admitted that the lease, set out in plaintiffs' petition, was entered into and that it was extended by mutual agreement of the parties an additional year commencing March 1, 1944, and that plaintiffs own the farm. Defendants also asserted that plaintiffs waived the condition against mortgaged property being brought onto the farm, denied that they had committed waste, asserted that they have farmed the premises in the manner required of them under the lease, that plaintiffs consented to the plowing of the pasture land and to

the sale of corn, that all cash rent has been fully paid; defendants admitted that the notice set forth in plaintiffs' petition was served on November 30, 1943, and that defendants have refused and still refuse to surrender possession of the farm; defendants denied that any conduct on their part constituted violation of the lease or grounds for termination of the lease. The prayer was that the action be dismissed.

On January 25, 1944, Pearl M. Peckham and Vera Peckham joined as plaintiffs in the action, asserted that on September 14, 1943, they entered into a contract of purchase of the farm and that they adopted each and all of the allegations of the plaintiffs' petition. Defendants moved to strike the Peckhams' joinder as plaintiffs on the ground that they were not parties in interest and were not entitled to any relief in the action. The court determined that, under applicable statutory provisions, the Peckhams, as purchasers, had such an interest that they were proper parties plaintiff and defendants' motion to strike was overruled.

Trial was had to the court in equity. The testimony introduced comprises over one hundred pages of the printed record. The court made extensive findings of fact therefrom and determined that the provisions of section 10161, Code, 1939, were not applicable to the issues herein, the sole question being whether defendants, as tenants, had violated the provisions of the lease such as to warrant termination thereof. The court found that, when the lease was made, of the one hundred sixteen acres of the farm, sixty-two acres were in corn, twenty-five acres in timothy, twenty-four acres in permanent pasture, and five acres for building lots and lane, being substantially the same proportions as in previous years; all the land was level, tillable, good farm land except the twenty-four-acre field in the southeast corner, which is quite rolling, cut with ditches and sloughs, washes badly, and is the poor part of the farm; this twenty-four-acre tract has been seeded in grass since 1937; the stand of timothy and bluegrass was such that it was permanent pasture and was so used by defendants in 1943 for ten cattle, fifty hogs, and two horses; there was no other pasture on the farm and it was not good farming practice to plow this permanent pasture; during November 1943 defendants plowed the entire farm ex-

cept the field of eleven and two-tenths acres in the northwest corner and a part of a field south of the road; the plowing included all of the twenty-four acres of permanent pasture and a part at least of the 1943 timothy ground, which had produced a substantial amount of hay; the type of plowing of the twenty-four-acre tract would not avoid washing and erosion; the plaintiffs first learned of the extent of the plowing on November 24, 1943, and promptly served notice to terminate the lease on November 30, 1943; defendant stated to a disinterested witness that he expected to have one hundred acres in corn in 1944, which was corroborated by the amount of plowing; there was a question as to the stand of 1943 grass seeding; if good it will be the only hay or pasture on the farm; if it winter kills, there will be none whatever; there was a sharp dispute whether plaintiffs consented to plowing the twenty-four-acre tract, but, under all the circumstances of the transaction, considering that a cash lease was involved, the previous and subsequent dealings and practices of the parties, the court did not believe that consent was given; there was no testimony as to consent to plowing the timothy ground; the testimony varied as to good farming practices for such a farm, but, from all the testimony, a fair conclusion was that not more than fifty per cent of the acreage should be in corn, twenty-five per cent in oats and hay, twenty-five per cent in pasture, with the rolling ground kept in permanent pasture; a lessee of farming land is under an implied duty to cultivate it according to good husbandry; undue or overtillage is generally considered to be waste; it is perfectly legitimate for a lessor to control the use of his property and he may insert such conditions in the lease; when there are conditions in the lease and a stipulation for forfeiture, the lessor may terminate the lease for breach of the conditions; the defendants broke the conditions of their lease and the plaintiffs are entitled to terminate the lease under the forfeiture provision therein.

Pursuant to the foregoing findings, which were incorporated in the decree, the court, on February 14, 1944, entered a decree determining that the lease between plaintiffs and defendants and the renewal thereof should stand terminated, that defendants should surrender possession of the farm on February

28, 1944, and, if they failed to do so, plaintiffs should be put in possession. From such decree, defendants have appealed to this court.

I. Defendants assert nine assignments of error herein. The first seven of them can be considered together. They are: (1) The decree is contrary to the evidence and is not supported by the evidence (2) the court failed to apply accepted tests to the credibility of the witnesses (3) the court failed to take into consideration an admission by plaintiff S. A. Meeker on the witness stand that he sought to oust defendants and to set aside the lease because of a desire to give possession of the farm to the Peckhams as purchasers rather than for the reasons assigned in the petition (4) the court erred in finding that defendants were guilty of waste and had not farmed the land in a farm-like manner as required by the lease (5) the court erred in holding as a matter of law that a landlord retains such implied right of proprietorship or management of the leased premises as to enable him to dictate specific uses of specific fields not-withstanding no reservations of that kind are contained in the written lease (6) the court erred in failing to apply the rule that, in an action between lessor and lessee, the evidence will be construed in the light more favorable to the lessee where the lease was prepared by the attorney for the lessor (7) the court erred in apparently taking judicial notice of what was and what was not good farming practice as a basis for its decision. These various assignments are related to each other and will be considered together. We find no merit in any of the contentions.

It is not necessary or desirable to attempt to summarize the voluminous evidence herein. Suffice it to say that it has been carefully considered and we are satisfied that there is an abundance of evidence to sustain each finding of fact which the trial court made. Its method of determining the credibility of the witnesses was also entirely proper. There is no dispute but that the twenty-four-acre tract of permanent pasture had been plowed by defendants. This was a specific violation of Paragraph I of the lease, above quoted, unless plaintiffs consented thereto. Defendants testified that, almost immediately after the written memo extending the written lease for another

year had been executed, they asked for and secured oral consent of plaintiffs to plow the twenty-four-acre pasture. Plaintiffs deny that such consent was given. It was necessary for the court to decide which witnesses to believe. In deciding to believe the plaintiffs the court considered that the rent was all to be paid in cash so that plaintiffs would gain nothing by permitting the pasture to be plowed; the testimony clearly establishes that twenty-five per cent of the farm should be in pasture, whereas defendants reduced the proportion far below that figure and created the possibility that there might be no pasture at all on the farm; the twenty-four-acre tract was rolling, cut with ditches and sloughs, washed badly, was the poor part of the farm, had been in permanent pasture for seven years and was the logical part of the farm to be so utilized. We are satisfied that the record supports the court's findings and that the court correctly decided the issue of credibility.

The claim that plaintiff S. A. Meeker admitted on the witness stand that he sought to secure possession of the farm for the Peckhams rather than for the reasons assigned in the petition is not supported by the record. The contract with the Peckhams was made subject to defendants' lease so that plaintiffs had no reason to oust defendants on that account. It is true that on cross-examination Meeker testified as follows: "Q. But you have been seeking to get him [defendant] off of there ever since you sold your place to Peckham; isn't that right? A. Yes." But this was immediately followed on redirect examination with this testimony: "A. He has violated his lease, that is the reason; and he plowed up everything that I didn't want plowed." We are satisfied that the record establishes that, when defendants learned that the farm had been sold to the Peckhams, the excessive plowing followed, apparently as a result of anger on the part of defendants, and that plaintiffs, in good faith, took the action which they did to protect the farm from injury and damage. The finding that the plowing was excessive, under all the circumstances, and that such excessive plowing constituted waste and a failure to farm in good farm-like manner has abundant support in the record. The contention that the plaintiffs could not dictate specific uses for specific fields in the absence of reservations in the lease is without merit. The lease

specifically prohibited defendants from plowing pasture without plaintiffs' consent and defendants did just that.

The rule that the lease should be construed against the one that drew it applies where there is ambiguity in the language. There is no occasion to apply that rule here. The claim that the court took judicial notice of what it personally thought was good farming practice is without merit. The record abundantly supports the court's conclusions on that issue.

II. Defendants' eighth assignment of error is that the supersedeas bond of $3,200, which the court required and which defendants were unable to give, was excessive. There are a number of reasons why this contention seems to be without merit, but we content ourselves with the observation that no appeal was taken from the court's order.

III. The ninth and final assignment of error is that the court erred in finding that defendants' sale of corn was a violation of the lease or an abuse of right by defendants sufficient to be considered as part of the justification for the decree herein. We will not prolong this opinion with a discussion of this contention. The matters heretofore reviewed afforded abundant grounds for the decree that was entered.

The decree is —Affirmed.

All JUSTICES concur.