SEARS, ROEBUCK AND COMPANY, INC., appellant, v. MIGNON B. POLING et al., appellees.

No. 49013.

(Reported in 81 N.W.2d 462)

March 5, 1957.

584

Jones, White & Johnson, of Ottumwa, for appellant.

Gilmore, Dull & Keith, of Ottumwa, for appellees.

GARFIELD, J.—The question presented by this appeal is whether terms of a written lease relieve plaintiff, lessee of defendants' building, from liability for its destruction by fire resulting from plaintiff's negligence.

The case comes here on plaintiff's appeal, granted by us under rule 332, from an adverse adjudication of law points under rule 105, Rules of Civil Procedure.

Plaintiff Sears, Roebuck & Company (we call it "Sears") sued defendants Cramblit and Poling at law for damages. The nature of that action is not now material. The disputed issue arises from defendants' counterclaim, plaintiff's answer to counterclaim, and defendants' reply to the answer. The counterclaim states that on January 14, 1948, a brick building owned by defendants, occupied by Sears as tenant under a written lease, was substantially destroyed by fire caused by Sears' negligence in cutting two openings, 6 by 8 feet in size, in the fire wall on the east side of the building; the fire spread to defendants' building from the one east of it through these openings; defendants were damaged in the sum of $75,000 for which they ask judgment. Copy of the lease is attached to the counterclaim.

Sears' answer to the counterclaim admits: its occupancy of the building under the lease, it cut openings in the east wall as a means of access to the building east of it which Sears also then used, fire started in the east building and spread to defendants' building, causing damage thereto. The answer denies Sears was negligent and denies the fire spread to defendants' building through the openings in the wall.

About sixteen months later Sears amended its answer by alleging the written lease relieves it from liability for the fire irrespective of whether it was caused by its negligence, defend-

ants agreed in the lease to insure the building against loss by fire "for the full insurable value", they did procure fire insurance on the building and collected the full amount they procured, if defendants failed to procure or collect insurance in the amount the lease requires they are estopped from claiming damages from Sears growing out of defendants' breach of terms of the lease.

By reply to Sears' answer defendant-owners alleged: the lease is on a printed form prepared by Sears, the language it relies upon is ambiguous as to its legal effect and should be construed strictly against Sears, the parties did not intend to relieve Sears from liability for destruction of the building by its negligence, the lease interpreted as a whole does not relieve Sears from such liability. Defendants' reply also states they did procure and collect fire insurance in the sum of $25,000 but the value of the building and defendants' loss amounted to $75,000.

Amendments to defendants' reply allege that pursuant to clause 15 of the lease they caused it to be terminated on January 19, 1948, Sears acquiesced therein and never became entitled to any of the insurance proceeds, by reason of said cancellation of the lease clauses 13 and 15 of the lease became inoperative and Sears is estopped from relying on them.

The reply as amended also alleges: the lease could not have been intended to release Sears from liability for negligence for the reason the annual rent of $3000, plus taxes insofar as they exceeded $719.30 per year, was only about 4% of the value of the leased premises and insufficient to show an intent that it furnished added consideration for the alleged release of liability; on the date of the lease (March 9, 1944) the annual cost of insurance for the full insurable value was $667.50; such cost increased to $1072.50, July 31, 1946; after this increase the rent returned only about 1.6% of the value of the premises after payment of taxes and deduction of premiums on insurance for the full value. (As previously stated, defendants insured the building for only one third its value.)

The trial court's adjudication of law points was in response to defendants' application that all points of law raised by Sears' amendment to answer to counterclaim and defendants' reply thereto as amended be adjudicated, pursuant to rule 105,

R.C.P. The trial court ruled the terms of the lease do not relieve Sears from liability for damages from fire caused by its negligence.

Although, as stated, Sears has denied it was negligent it concedes for purposes of this appeal such negligence in causing the fire must be assumed. It also concedes other well-pleaded allegations of defendants are to be considered as true.

It is apparent terms of the lease that bear on this controversy are of vital importance. We quote them here:

"THIRD: Tenant agrees that * * * upon the termination of this lease the demised premises will be in substantially as good condition as received, loss by fire, tornado, earthquake or any unavoidable casualty and ordinary wear and tear excepted.

"THIRTEENTH: Landlord hereby agrees * * * at his expense to keep said demised premises insured at all times during the term hereof against destruction or damage by fire or tornado for the full insurable value thereof, said insurance, in the event of loss during said term * * * to be payable to Landlord and Tenant as their interests appear under the Fifteenth Clause hereof. * * *

"FIFTEENTH: * * * In the event the demised premises are hereafter * * * rendered wholly unfit for their accustomed uses, by fire, tornado, earthquake, or any casualty, then either party hereto shall have the right to terminate this lease * * * by giving to the other party hereto, within ten (10) days after the happening of such casualty, written notice of such termination; if said notice be given within said * * * period, this lease shall terminate, as aforesaid, * * *; in the event said notice be not given within said * * * period, this lease shall not terminate, but Landlord shall, at his own expense, promptly repair and rebuild said premises and restore the same to substantially the condition in which they were immediately prior to the happening of such casualty, and rent shall abate from the date of such casualty until said premises are so repaired, rebuilt and restored.

"If Landlord fails to promptly repair, rebuild or restore said premises as herein provided, then Tenant shall have the

right * * * to terminate this lease by giving Landlord written notice of such termination, or Tenant, at its sole option, may repair, rebuild or restore the demised premises; and if Tenant elects to repair, rebuild or restore said premises, Tenant shall have the further right to collect and use for that purpose all or so much as may be necessary of the insurance upon the demised premises payable by reason of such damage or destruction, and Landlord shall pay Tenant upon demand the expense incurred by Tenant in so repairing, rebuilding or restoring said premises * * * less any insurance received by Tenant as above provided for; * * *.

"RIDER, Page 1 * * *

"FOURTH: Tenant shall secure the written approval of landlord before any building exterior structural changes or alterations are made. * * *."

In connection with this last provision it seems to be conceded for present purposes Sears did not secure defendants' written approval before making the openings in the east wall.

In general Sears contends and defendants deny the above terms of the lease are clear and unambiguous and determine the rights of the parties in favor of nonliability of Sears. Resort to rules of construction and extrinsic circumstances, Sears asserts and defendants deny, is therefore unnecessary and improper.

▪ I. It is true, as Sears argues, it is not contrary to public policy, where the public interest or some statutory prohibition is not involved, for parties to a lease to agree that one of them is relieved from liability for future negligence in causing a fire. Indeed the public policy of freedom of contract is best served by enforcing such provision. Griswold v. Illinois Central Ry. Co., 90 Iowa 265, 57 N.W. 843, 24 L.R.A. 647; Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co., 175 U. S. 91, 20 S.Ct. 33, 44 L.Ed. 84; Santa Fe, P. & P. R. Co. v. Grant Bros. Constr. Co., 228 U. S. 177, 188, 189, 33 S.Ct. 474, 57 L.Ed. 787, 793; Commercial Union Assur. Co. v. Foley Bros., 141 Minn. 258, 169 N.W. 793, 794; Kansas City Stock Yards Co. v. A. Reich & Sons, Mo., 250 S.W.2d 692, 698. See also

Restatement, Contracts, sections 574, 575; Annotation 175 A.L.R. 8, 13 to 15; 17 C.J.S., Contracts, section 262.

While defendants concede it is not ordinarily contrary to public policy for parties to contract for freedom from liability for negligence, they properly remind us that the issue here is whether this lease contains such a contract.

■ II. In most cases contract provisions that are subject to construction, which a party claims relieve him from liability for his own negligence, particularly active negligence, are strictly construed against him. They are not held to cover such negligence unless the intention to do so is clearly expressed. Fields v. City of Oakland, 137 Cal. App.2d 602, 608, 291 P.2d 145, 149; Freddi-Gail, Inc., v. Royal Holding Corp., 34 N. J. Super. 142, 111 A.2d 636, 637; Winkler v. Appalachian Amusement Co., 238 N. C. 589, 79 S.E.2d 185, 190; Carstens v. Western Pipe & Steel Co., 142 Wash. 259, 252 P. 939, 941; Annotation 175 A. L. R. 8, 18, 89 to 92; 17 C. J. S., Contracts, section 262; 51 C. J. S., Landlord and Tenant, section 414. See also Oscar Ruff Drug Co. v. Western Iowa Co., 191 Iowa 1035, 181 N.W. 408, 15 A. L. R. 962.

Referring to "broad exculpatory provisions relieving the landlord from liability for damages" from various causes, the annotation in 175 A. L. R. 8, page 89, states: "With but few exceptions, these clauses have not immunized the landlord from responsibility for his acts of affirmative negligence."

There can be no doubt the negligence charged against Sears here, and assumed for purposes of this appeal, is of the active or affirmative kind. Cutting the openings in the fire wall was not only an affirmative act but, as the case now stands, was in violation of the provision of the lease requiring "the written approval of the landlord before any building exterior structural changes or alterations are made."

■ It is also elementary that an instrument which is subject to construction is construed most strongly against the party who prepared it—in this case Sears. Pazawich v. Johnson, 241 Iowa 10, 14, 39 N.W.2d 590, 592, and citations; Marty v. Champlin Refining Co., 240 Iowa 325, 335, 36 N.W.2d 360, 365; Meeker v. Shull, 235 Iowa 701, 708, 17 N.W.2d 514, 517; Restatement,

Contracts, section 236(d); 12 Am. Jur., Contracts, section 252; 17 C. J. S., Contracts, section 324.

Sears' contention that any ambiguity in this lease must be resolved in its favor cannot be accepted. While it is frequently said provisions of doubtful meaning in a lease are ordinarily to be construed most strongly in favor of the lessee, this is on the assumption the lessor has prepared the instrument. Where, as here, the lessee has prepared it provisions of doubtful meaning are construed against him. Habermel v. Mong, 6 Cir., Tenn., 31 F.2d 822, 67 A. L. R. 216, 221, and citations, certiorari denied 280 U. S. 587, 50 S. Ct. 37, 74 L. Ed. 636; Baird v. Lindblad, 75 Cal. App.2d 202, 170 P.2d 488, 489; Powerine Co. v. Russell's, Inc., 103 Utah 441, 135 P.2d 906, 913; Northwestern Loan & Trust Co. v. Topp Oil & Supply Co., 211 Wis. 489, 248 N.W. 466, 468; 32 Am. Jur., Landlord and Tenant, section 128; 51 C. J. S., Landlord and Tenant, section 232*l*, page 860.

As previously indicated Sears contends in effect the rules of construction to which we refer have no application here because, it is said, the quoted provisions of the lease provide in clear and unambiguous language Sears is not liable for damages from fire even though caused by its own active negligence. It is of course true, as we have intimated, resort may be had to rules of construction only where the language of an instrument is of doubtful meaning. In re Estate of Murdoch, 238 Iowa 898, 903, 29 N.W.2d 177, 179, and citations; City of Des Moines v. West Des Moines, 244 Iowa 310, 315, 56 N.W.2d 904, 907; 12 Am. Jur., Contracts, section 229; 17 C. J. S., Contracts, section 294.

III. We cannot agree this lease clearly expresses the intention of the parties to relieve Sears from liability for fire caused by its own active negligence in doing something in violation of a provision of the lease. Incidentally this provision is typewritten, not printed as are those upon which Sears relies. Certainly if the parties intended to relieve the lessee from such a liability it is reasonable to expect Sears would have found more apt language to express that intent than this lease contains.

In the third clause of the lease Sears agrees that upon its termination the "premises will be in substantially as good condition as received, loss by fire, tornado, earthquake or any unavoidable casualty and ordinary wear and tear excepted." The

clause says nothing about negligence nor any tort liability of Sears therefor. Every cause specified in this exception other than fire is clearly one wholly unrelated to any act of the tenant, negligent or otherwise. The fifteenth clause lists fire, tornado and earthquake as if they were in the same category of casualties. Either party is given as much, and no greater, right to terminate the lease because of fire as for tornado or earthquake. Tornadoes and earthquakes are of course unavoidable casualties and the parties recognized them as such.

It is true fires are frequently caused by a tenant's negligence. Yet they may and often do occur without any lack of care on his part. Such fires are also unavoidable casualties so far as any act of the tenant is concerned. It is not clear the reference to fire in this clause is not to fire not caused by some act of the tenant. If the third clause said "or any *other* unavoidable casualty" there would be little room for Sears' position. Yet if emphasis is put on the word "any" the language actually used imparts about the same meaning.

Sears says that if the parties intended to relieve it only from loss by fire it could not have avoided there was no occasion to mention fire at all—the reference to "unavoidable casualty" would have been sufficient. This suggestion is not persuasive in view of the use of the words tornado and earthquake, obviously unavoidable casualties. There was as much occasion to refer specifically to fire as to tornado or earthquake.

The thought we have just tried to express finds support in Slocum v. Natural Products Co., 292 Mass. 455, 456, 457, 198 N.E. 747, 748, cited by Sears. That was an action by a landlord for breach of the tenant's contract to keep the premises in repair, " 'damage by fire or unavoidable casualty only excepted.' " In rejecting the landlord's contention that to be within the exception the fire must be an unavoidable casualty the court stated: "If it had been intended that the fire must also be an unavoidable casualty, it would seem that there was no occasion for mentioning fire at all or that, if mentioned, qualifying words would have been used *or other types of possible unavoidable casualties would also have been mentioned.*" (Italics ours.)

That the Slocum decision is not authority for Sears' position also appears from this language therein: "It does not nec-

essarily follow that the lessors would have no action in tort for the damage sustained." (The counterclaim of course states an action in tort.) A somewhat similar qualification of the opinion appears in Day Wood Heel Co. v. Rover, 123 Ohio St. 349, 351, 175 N.E. 588, 589, also cited by Sears. Nor may that case be regarded as authority for Sears' position since it was there held the phrase " 'fire and other unavoidable casualty' " was ambiguous. There is no room for a decision in favor of Sears at this time unless the lease relieves it in clear and unambiguous language from the liability asserted against it.

The burden of Sears' argument is that it is clearly relieved from liability by the third clause in the lease, when taken together with the requirement of the thirteenth clause that defendants shall insure the premises for the full insurable value against damage by fire. But we think the thirteenth clause, separately or taken together with the third clause, does not clearly relieve Sears from the liability pleaded by defendants.

The thirteenth clause must be considered in connection with the fifteenth (which is mentioned in the thirteenth) and, for that matter, with the entire lease. From these two clauses it appears the insurance was to constitute a fund for reconstructing the building, if either party desired to do so in the event of its destruction by fire. Apparently neither party wanted to rebuild and Sears acquiesced in defendants' termination of the lease pursuant to the fifteenth clause.

It is true defendants violated the requirements of the thirteenth clause by insuring the property for only about one third its value. Whether Sears has or had any cause of action against defendants for this violation of their contract is a question not before us.

Our conclusion finds support in Oscar Ruff Drug Co. v. Western Iowa Co., supra, 191 Iowa 1035, 1039–1044, 181 N.W. 408, 410, 15 A. L. R. 962, and several decisions from other jurisdictions. In the Ruff case a tenant sued its landlord for damage to its stock of merchandise caused by the negligent manner in which defendant caused alterations to be made on the building. The landlord claimed it was relieved from liability by these provisions of the lease, more sweeping than those now before us:

"And in no case whatever shall lessor \* \* \* be liable to the lessee \* \* \* for any injury, loss or damage to any person or property on the premises, \* \* \* and all property of any kind that may be on the premises shall be at the sole risk of the lessee \* \* \* and that the lessor \* \* \* may make repairs and alterations, if it should elect so to do, \* \* \*." In holding these provisions did not constitute a defense we say: "The clause in the lease \* \* \* is couched in general terms, and does not specifically exempt the defendant from liability for the negligent acts of the landlord. \* \* \*.

"Exemption clauses in various leases somewhat less sweeping and comprehensive in their general terms have been held by the courts of other jurisdictions, particularly by the New York courts, not to operate as a waiver of the right of the tenant to recover from a landlord damages resulting from the making of repairs in a negligent manner. \* \* \*

"It is our conclusion upon this point that, \* \* \* plaintiff \* \* \* did not, by the provisions quoted, waive his right to claim damages for the total destruction of his stock of merchandise, as the result of the negligence of the defendant in repairing, altering, and reconstructing a portion of the building occupied by plaintiff, and, in a measure, at his instance and request."

Other precedents which support our holding include Cairnes v. Hillman Drug Co., 214 Ala. 545, 108 So. 362; Morris v. Warner, 207 Cal. 498, 279 P. 152, 153; Fields v. City of Oakland, supra, 137 Cal. App.2d 602, 291 P.2d 145, 149; Freddi-Gail, Inc., v. Royal Holding Corp., supra, 34 N. J. Super. 142, 111 A.2d 636; Winkler v. Appalachian Amusement Co., supra, 238 N. C. 589, 79 S.E.2d 185, 190 (closely in point); Carstens v. Western Pipe & Steel Co., supra, 142 Wash. 259, 252 P. 939, 941. See also Brophy v. Fairmont Creamery Co., 98 Neb. 307, 152 N.W. 557, L. R. A. 1918A 367.

32 Am. Jur., Landlord and Tenant, section 783, states: "A tenant is, however, liable for injury to his landlord from the destruction by fire of a building on the demised premises caused proximately by the tenant's negligence, even though the lease contains a provision that at the end of the term he shall yield possession 'subject to loss by fire.'"

51 C. J. S., Landlord and Tenant, section 414, says: "Whether an exception of liability for injury by fire includes a fire caused by the tenant's negligence depends on the intention of the parties, but, unless the exception clearly contemplates damage caused by the tenant's negligence, it will not be construed to except liability for such injury."

We have carefully considered General Mills v. Goldman, 8 Cir., Minn., 184 F.2d 359, certiorari denied 340 U. S. 947, 71 S. Ct. 532, 95 L. Ed. 683, and Cerny-Pickas & Co. v. C. R. Jahn Co., 7 Ill.2d 393, 131 N.E.2d 100, on which Sears strongly relies. In each case a tenant was held not liable to its landlord, under terms of the particular lease, for destruction of the leased building by fire caused by the tenant's negligence. There are strong dissenting opinions in each case.

We think General Mills v. Goldman is distinguishable from the present case for several reasons. The exception in the lease, and also in the Cerny-Pickas lease, covered only " 'loss by fire and ordinary wear' " and did not specify other causes for which the tenant was in no way responsible, as tornado and earthquake. The fire was caused by failure of an employee to exercise care, not, as here, by an affirmative act in violation of a provision of the lease. The court considered circumstances extrinsic of the lease from which it concluded the parties intended the exception to apply to a fire even though caused by the tenant's negligence. Here, as stated, a decision for Sears is not now justified unless the lease clearly exempts it from the liability asserted. Nothing in the General Mills opinion indicates the lease was prepared by the lessee. This is also true of the Cerny-Pickas case. Unlike the present case, the landlords had collected from their insurer more than their investment in the premises and "in practical effect the tenant paid the cost of the fire insurance" (page 366 of 184 F.2d). The two prevailing Judges evidently felt it would be unjust under these circumstances to require the tenant also to pay for the loss.

Cerny-Pickas & Co. v. C. R. Jahn Co., supra, 7 Ill.2d 393, 131 N.E.2d 100, is distinguishable from the present controversy in at least the two respects above indicated.

■ IV. As previously stated, Sears alleged if defendants failed to procure or collect fire insurance for the full insurable

594

value of the premises as required by the thirteenth clause of the lease they are estopped from making claim against Sears for damage growing out of defendants' breach of terms of the lease. Defendants pleaded in reply they procured and collected insurance of $25,000 but the value of the building was $75,000.

The trial court's adjudication of law points is silent on the issue of estoppel, perhaps because it was not understood it was submitted to him. We might therefore be justified in ignoring the issue. However, since it is argued, we will say we cannot agree it appears from the pleadings as a matter of law defendants are estopped from asserting their counterclaim.

The contention seems to be there is an equitable estoppel against defendants sufficient to entitle Sears to a dismissal of the counterclaim before trial. Basis for the contention is defendants' failure, shown by their pleadings, to take out insurance for the full value of the premises. We are cited to no decision that supports this position. The precedents Sears has cited are typical ones of equitable estoppel. Three of them hold a farm tenant was estopped under the particular facts to claim the benefits of what are now sections 562.6, 562.7, Code 1954, requiring written notice of termination of farm tenancies. Smith v. Coutant, 232 Iowa 887, 890–893, 6 N.W.2d 421, 424, 425, is the first of these decisions. Others cited on this issue are similar in principle. We fail to see their applicability here. Certainly the elements of equitable estoppel do not appear as a matter of law from defendants' pleadings.—Affirmed.

All JUSTICES concur.