H. J. GRISWOLD *et al.*, Appellants, v. ILLINOIS CENTRAL RAILWAY COMPANY.

ON REHEARING.

Contract Exempting from Liability for Negligence: VALIDITY OF SECTION 1289, CODE, CONSTRUED. A stipulation in a contract in which a railroad company permits a building to be erected on its right of way wherein business is to be done with the public, that the company shall not be liable for fire negligently communicated by it to such building, does not contravene public policy. (1)

LIABILITY OF COMMON CARRIER: CODE, 1308 CONSTRUED. Though said building is to be used for making shipments over defendant's road, and for purposes, ultimately, beneficial to it as a common carrier, said stipulation is not made in its capacity as a common carrier, and is not within the statutory provision prohibiting such carrier from exempting itself by contract from a liability which would exist without such contract. (2)

PUBLIC NOT INTERESTED IN SUCH CONTRACT. Though the contract was that business in said building should be conducted so that the public should not be prejudiced, the public has no such interest in who shall bear the loss if the building be destroyed by fire, as to render

said stipulation of exemption void as against public policy. (2) ROB
INSON and KINNE, JJ., *dissenting,* 53 N. W. Rep. 295; s. c., reversed
on this rehearing.

*Appeal from Buchanan District Court.*—HON. J. L.
HUSTED, Judge.

SATURDAY, FEBRUARY 3, 1894.

ACTION to recover damages for the loss of an elevator by fire, alleged to have been caused by negligence
on the part of defendant. A demurrer to the answer
was overruled. The plaintiffs electing to stand on their
demurrer, judgment was rendered against them for
costs and they appeal.—*Affirmed.*

*R. W. Barger* and *E. E. Hasner* for appellants.

*W. J. Knight* for appellee.

GIVEN, J.—A rehearing was granted in this case,
and it is again submitted with further arguments. The
facts disclosed by the pleadings, which are material to
be considered, are sufficiently stated in the former
opinion (53 N. W. Rep. 295), and are as follows: "On
the thirtieth day of April, 1890, the plaintiff Griswold
owned a two and one half story elevator building,
warehouse and corncrib attached, together with engine
and boiler connections and feed mill therein, all of
which were situated on the depot grounds of defendant
immediately north of its track, in the village of Winthrop. In the morning of the day named, the property described was totally destroyed by fire, which was
kindled by sparks and cinders from a locomotive
engine of defendant while passing on its track. The
sparks and cinders escaped from the engine in consequence of defects in its construction and appliances,
and in consequence of the negligent manner in which
it was operated. The property destroyed was of the

value of six thousand dollars, and was, at the time, insured by the plaintiffs the Iowa State Insurance Company, the Commercial Union Assurance Company, Limited, the St. Paul German Insurance Company, and the Farmers' Fire Insurance Company in the sum of one thousand dollars each, or for the aggregate amount of four thousand dollars. After the property was destroyed, each insurance company paid the amount of loss for which it was responsible, and, claiming that by reason of such payments they became subrogated to the rights of Griswold to the extent of the amounts so paid, they join him in demanding judgment against defendant for the value of the property destroyed. Griswold occupied the premises on which the property stood, by virtue of a lease to him from defendant, which contained the following provisions: 'And the lessee, in consideration of the premises, hereby covenants and agrees with the lessor, its successors and assigns, to pay the said lessor, as rent for said premises, the sum of one dollar, to be paid at the time and in the manner following, to wit, on the delivery of this lease; and the lessee further covenants and agrees with the lessor that he will, from the date of this indenture, put to use and maintain a good, substantial elevator, coal sheds, and lumber yard on the above described premises; and further agrees to protect and save harmless said lessor from all liability for damage by fire, which, in the operation of the lessor's railroad, or from cars or engines lawfully on its tracks, may accidentally or negligently be communicated to any property or structure on said described premises. And the said lessee hereby agrees to ship all grain, coal, and lumber he can control by the Illinois Central Railroad. And the said lessee further covenants and agrees with the said lessor that he will transact the business for which said buildings are erected and designed at fair and reasonable rates, and in a prompt

and careful manner, so that neither the company nor the public will be prejudiced by reason of the said lessee dealing unfairly or negligently in their behalf, or in the transaction of the business connected with the grain, coal, and lumber building so erected as aforesaid.' The defendant claims that plaintiffs are not entitled to recover, for the reason that Griswold undertook, by the terms of the lease, to protect and save it harmless from such losses as that in question. The ground of the demurrer is as follows: 'The petition and answer show that the action is commenced by the owner and insurer of an elevator built upon defendant's land alongside of its track, for the purpose of handling grain, and that said elevator was burned through the negligence of defendant, its agents and employees. The plaintiffs, therefore, say it is against public policy, and contrary to the statutes of Iowa, for the defendant to attempt to restrict by contract its liability for the negligence of its agents, employees and servants; and that said defense, so far as it is based upon exemptions from liability by reason of this contract of lease, is not good, as such contract of exemption is void.' No special claims are made in behalf of the insurance companies; therefore, their interests and that of Griswold, for the purposes of this appeal, will be treated as governed by the same rules.''

I.    It will be seen, from the statement of the case, that the controlling question is whether that clause in the lease whereby plaintiff Griswold agrees to protect and save harmless the defendant from all liability for damages by fire negligently communicated to the property on the leased premises in the operation of the railroad is void, as against public policy. The right to so contract as to fire accidentally communicated is not questioned, but only the right to so contract as to fire negligently communicated. Public policy is variable,— the very reverse of that which is the policy of the

public at one time may become public policy at another; hence, no fixed rule can be given by which to determine what is public policy. The authorities all agree that a contract is not void, as against public policy, unless it is injurious to the interests of the public, or contravenes some established interest of society. Public policy has been aptly described as "an unruly horse, and, when once you get astride, you never know where it will carry you." It was said by WILMOT, C. J.: "It is the duty of all courts to keep their eyes steadily upon the interests of the public, even in the determination of commutative justice, and when they find an action is founded upon a claim injurious to the public, and which has a bad tendency, to give no countenance or assistance in *foro civili.*" Other courts have said: "We may take it as well settled that in the law of contracts the first purpose of the courts is to look to the welfare of the public, and, if the enforcement of the agreement would be inimical to its interest, no relief could be granted to the party injured, and even though it might result beneficially to the party who made and violated the agreement. The common law will not permit individuals to oblige themselves by a contract either to do, or not to do, anything, when the thing to be done or omitted is in any degree clearly injurious to the public." Again, it is said: "It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because, if there is one thing more than another which public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into fairly and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore, you have this paramount public policy to consider, that you are not likely to interfere with this freedom of contract." 3 Am. and

Eng. Encyclopedia of Law, p. 875, note 3; *Boardman v. Thompson*, 25 Iowa, 501. Aided by these definitions and cautions, we proceed again to inquire whether the clause of the agreement in question, if carried into effect, would be injurious to any interest of the public, or, in other words, whether the public has any interest in this provision of the contract. The conclusion of the former opinion is "that the provision, if effectual, would cause the defendant to disregard and neglect a duty which it owes to the public, and thereby violate an obligation imposed upon it by law." This conclusion rests, in part at least, upon holding that sections 1289 and 1308 of the Code are applicable to the question under consideration, and that the defendant owed it as a duty to the public to operate its road with care with respect to plaintiff's property. The discussion on rehearing leads us to inquire whether, under the law and facts, it is correct to say that the defendant owed any duty to the public with respect to the plaintiff's property. The former opinion holds correctly that the liability of railroad corporations, under section 1289, for negligently setting out fires, is absolute, and that the obligation on the part of the railroad companies to exercise care is towards the public; but the question remains whether that section applies to cases like this, or, in other words, whether it established any interest in the public, or imposed any duty upon the defendant towards the public, in respect of the property of the plaintiff. The defendant owed no duty to the public to exercise care with respect to its own buildings situate on its right of way, and incurred no liability for their negligent burning, unless the fire spread beyond its own premises. The operation of a railway increases the danger from fire to property situated on the premises of its owner, where he has the right to have it, and hence the provision of section 1289

making the corporation operating the railway absolutely liable for all damages by fire that is negligently set out or caused by the operation of the railway. As to such property the railway company owes to the public the duty of care, and the public has an interest in the performance of that duty. Therefore, a contract that exempts from that duty to the public would be injurious to the public interests, and against public policy. The plaintiff Griswold's buildings were not upon his own premises, nor where he had a right to have them, independent of the defendant; they were upon the right of way, where they could only be by its permission.

In granting the permission, and in placing the buildings there, both parties knew of the increased hazard of the location from fire communicated either through accident or negligence in the operation of the road. They knew that the defendant corporation could only act through its officers, agents, and employees, and that these might be negligent in the performance of their duties. The plaintiff had an insurable interest, and could, as he did, protect himself, in part at least, against loss by either accident or negligence. The defendant had no insurable interest, and could only protect itself from the hazard by refusing consent, or by contracting for indemnity, as it did. Plaintiff Griswold contracted with his coplaintiffs, the insurance companies, for indemnity against loss by fire, whether caused by accident or negligence. The fire occurred through neglect, and the insurance companies, as they were bound to do, paid the insurance. Those contracts, like this, were for indemnity against liability by fire, whether caused by accident or negligence. Many losses by fire occur through the negligence of the insured or his family, and recovery is had, unless the negligence was willful. While these policies are not before us, we may assume, we think, that, under them,

the plaintiff Griswold would have been entitled to recover, even though the loss had occurred through his own negligence, unless it was willful. The public had no interest in these contracts of insurance between the plaintiffs; nor were they against public policy, because the companies agreed to indemnify the assured against loss caused by his own negligence. This is not a question whether, under section 1289, the defendant would be liable to Griswold for negligently communicating fire to this property in the absence of a contract to the contrary, but it is whether the public has any interest that this contract contravenes. It seems to us now quite clear that, as these buildings could only be placed upon the defendant's right of way by its consent, and were so placed upon the premises, and on the conditions expressed in the lease, the public had no interest therein, under said section 1289 or otherwise, that would be injured by giving effect to the agreement in question. Much as the public may have been interested in the convenience of such a place of business, it had no interest as to who should carry the hazard incident to that property being located as it was. The fact that the defendant acquired this right of way in the exercise of the right of eminent domain did not preclude it from granting or withholding permission to the plaintiff to build thereon, nor the parties from contracting as to which should bear the hazard incident to the location.

II. It is contended that the defendant entered into this contract in its capacity as a common carrier, and therefore we must apply to the consideration of the question section 1308, providing, in effect, that carriers of persons or property can not exempt themselves from liability by contract which would exist had no contract been made. It is undoubtedly true that the ultimate purpose of the defendant in entering into this contract was the promotion of its business as a

common carrier. But the contract is not for the carriage of persons or property. That the ultimate purpose was to increase its business as a carrier does not make this a contract for carriage any more than would be the employment of workmen in its shops, warehouses, or elsewhere, apart from the operation of the road. Upon further consideration we are of the opinion that this contract was not made by the defendant in its capacity as a common carrier, and that the provision of section 1308 is not applicable. *Johnson's Adm'x v. Railway Co.*, 11 S. E. Rep. (Va.) 829, and other cases involving contracts of exemption from liability for causing injuries to, or death of, persons, are not applicable. The public has an interest in the life and safety of every human being, and every such contract is clearly injurious to public interest, but not always so as to property.

III. In the lease the plaintiff Griswold agrees "that he will transact the business for which said buildings are erected and designed at fair and reasonable rates, and in a prompt and careful manner, so that neither the company nor the public will be prejudiced by reason of the said lessee dealing unfairly or negligently in their behalf, or in the transaction of the business connected with the grain, coal, and lumber building so erected as aforesaid." While it is evident the parties contemplated a place for dealing with the public, in the maintenance and management of which the public might be interested, neither that interest nor Mr. Griswold's agreement gave the public any interest as to who should bear the hazard of the loss of the buildings by fire. The plaintiff indemnified himself against the loss, in part at least, by insurance, and the insurance companies have paid him, as they were bound to do. Surely, public policy does not demand that the defendant shall now reimburse these insurance companies for the payments they were bound to make by

their own contract, and which the defendant has never promised to repay. As to the claim of the plaintiff Griswold to recover the excess of the loss over the amount of insurance, public policy answers, You must stand by your contract. After a careful review of the case, we reach the conclusion that the public had no interest in the clause of the contract in question, that its enforcement works no injury to any interest of the public, and that the judgment of the district court should be affirmed.

ROBINSON, J. (*dissenting*).—I can not assent to the conclusions of the foregoing opinion that the agreement in question was effectual to relieve the defendant of liability for negligently setting fire to and destroying the property of the plaintiff. Something has been said on rehearing in regard to the liability of the defendant to the insurance companies and their right to recover; but as no question in regard to such liability and right of recovery, as distinguished from the liability of defendant to Griswold for the loss he sustained, for which he has not been compensated, is presented by the pleadings, or was argued on the first submission of the cause, it should not, as it seems to me, be given weight now. It is well settled that, in a civil case, a party can not, on rehearing, make a case different from that presented on the original submission. *McDermott v. R'y Co.*, 85 Iowa, 180, 52 N. W. Rep. 185, and cases therein cited. It follows that the only questions which we should now consider are those involved in determining the character and effect of the provisions of the case in question, and the right of Griswold to recover, without regard to the interests of the insurance companies. On the rehearing we have been favored with elaborate arguments by representatives of several of the leading railway corporations doing business in the state, and, in explanation, it is said that the questions involved are of interest to all railway companies in the

state, and that the former opinion, if adhered to, will seriously affect their management and business. It is probably fair to presume that leases with provisions similar to the one in controversy are now, or soon will be, in general use in the state, and that the questions involved are of interest to the large number of persons who are now, or shall hereafter be, concerned in buildings and property located on land owned by railway corporations by virtue of leases from the corporations. The importance of the questions to the railways and to people doing business with them is apparent. It does not seem to me that the authorities cited in the opinion of the majority justify the conclusions they reach. Section 1289 of the Code provides that "any corporation operating a railway shall be liable for all damages by fire that is set out or caused by operating of any such railway. * * *" It was said in *West v. R'y Co.*, 77 Iowa, 654, 35 N. W. Rep. 479, and 42 N. W. Rep. 512, that this statute imposes an absolute liability upon railway corporations without regard to the contributory negligence of the person injured, for damages resulting from fires set out or caused by negligently operating their railways. The facts admitted in this case show that the fire in question was caused by defendant in operating its railway, and that the fire was the result of negligence on its part. Whether a railway company may limit its liability for a fire which it causes without fault on its part is a question not involved in this case; but we are required to determine whether a railway company may, by a contract entered into before the act, limit its liability for a fire which is caused by negligence on its part in operating its railway. Section 1308 of the Code provides, in effect, that a common carrier, or carrier of passengers, can not exempt itself from liability, as such carrier, by contract. Although there is some conflict in the authorities, yet it is the general rule, in the absence of stat-

utory regulations, that railway companies can not restrict their liability for negligence in transporting passengers or freight by contracts made in advance of the carriage; and the same is true in regard to the power of telegraph companies to limit their liability for negligence in transmitting dispatches. It is said in Cooley on Torts (page 687), with reference to agreements of that kind, that "the cases of carriers and telegraph companies have been specially mentioned, because it is chiefly in these cases that such contracts are met with. But, although the reasons which forbid such contracts have special force in the business of carrying persons and goods, or of sending messages, they apply universally, and should be held to defeat all contracts by which a party undertakes to put another at the mercy of his own faulty conduct." In *Johnson's Adm'x v. R'y Co.*, 11 S. E. Rep. (Va.) 829, the administrator sought to recover damages for the death of his intestate, which was claimed to have been caused by the negligence of the railway company. The decedent had been a member of a firm of quarry men, which agreed with the railway company to remove a certain granite bluff from its right of way. He was killed by a train of the company while he was engaged in doing the work required by the agreement. There was evidence which tended to show that the accident was caused by negligence on the part of the company. It claimed exemption from liability, however, on the ground that the agreement provided that it should "in no way be held responsible for any injuries to, or death of, any of the members of the said firm, or of any of its agents or employees, sustained from said work, should such death or injury occur from any cause whatsoever." The court, in commenting on this provision of the agreement, said: "To uphold the stipulation in question would be to hold that it was competent for one party to put the other parties to the

contract at the mercy of its own misconduct, which can never be lawfully done where an enlightened system of jurisprudence prevails. Public policy forbids it, and contracts against the public policy are void. Nothing is better settled—certainly in this court—than that a common carrier can not, by contract, exempt himself from responsibility for his own or his servant's negligence in the carriage of goods or passengers for hire. This is so, independently of section 1296 of the Code, and the principle which invalidates a stipulation for exemption from liability for one's own negligence is not confined to the contracts of carriers as such. It applies universally."

Railway corporations are *quasi* public agencies, and perform a public duty. They are agencies created by the state with certain privileges, and subject to certain obligations. A contract that they will not discharge their obligations is a breach of a public duty, and can not be enforced. *Railway Co. v. Ryan*, 11 Kan. 609. An agreement by which a railway corporation undertakes, without the consent of the state, to relieve itself of a burden which is imposed upon it by law, is void, as against public policy. *Thomas v. Railway Co.*, 101 U. S. 71. Among the obligations imposed upon railway corporations is that of using reasonable diligence in furnishing its road with safe equipments, including locomotive engines, and of operating its road without negligence. That is a duty which it owes to the public, and any agreement which tends to lessen the diligence and care with which it furnishes and operates its road is, to that extent, against public policy. The contract entered into between Griswold and defendant was not for carriage, and primarily it was for the benefit of the parties to it, and not in the interest of the public. But it is clear that its purpose on the part of defendant was to benefit and promote its business as a carrier. The nominal sum of one dollar was not the considera-

tion which induced it to enter into the agreement. Elevators, coal sheds and lumber yards are important aids to a railway engaged in carrying grain, coal and lumber, in securing and transacting that branch of its business; and the promise of Griswold to maintain and use them, and to ship all grain, coal and lumber he could control over defendant's road, and the prospect for business which the existence and use of the improvements named held out to defendant, were no doubt important and controlling considerations which induced it to execute the lease. Those improvements were not only of value to the defendant, but they were important to all who bought or sold or stored commodities which were received in them. In other words, the lease was a means to promote the end for which the road of defendant was built and operated, and the public was interested in the improvements for which it provided, to the extent to which it patronized them. Its interest may not have been a distinct entity, capable of enforcement at the suit of any citizen, but it was one which the law recognizes, and which it will, in a suitable case, protect. The lease itself fully recognizes an interest of the public in its subject-matter. It provides that the lessee "shall transact the business for which said buildings are erected and designed, at fair and reasonable rates, and in a prompt and careful manner, so that neither the company nor the public will be prejudiced by reason of the said lessee dealing unfairly or negligently in their behalf, or in the transaction of the business connected with the grain, coal, and lumber building so erected as aforesaid." It is true that a contract is not void, as against public policy, unless it is injurious to the interests of the public, or tends to have that effect, or contravenes some established interest of society. But, when a contract belongs to one of those classes, it will be declared void, although, in a particular instance, no injury to the public may result.

5 Lawson, Rights, Rem. & Pr., section 2392. "A contract invading any one of the other interests which the law cherishes, though to do what is neither indictable nor prohibited by a statute, is termed a 'contract against public policy' (or sound policy) is likewise void." Bish. Cont., section 473. To justify the conclusion that the provision under consideration is void, it is only necessary to find that the provision, if effectual, would cause, or tend to cause, the defendant to disregard or neglect a duty which it owes to the public, and thereby violate an obligation imposed upon it by law. That such would be the effect of the provision, if sustained, does not appear to me to be doubtful. It was not intended merely to require Griswold to bear the loss which should result from the hazards to which his property should be exposed by operating the railway with reasonable prudence and care, but it was intended to exempt the defendant from all liability for damages from fire which should be caused in operating its railway without regard to acts of negligence, or lack of precaution and care on its part, which should contribute to the loss. The agreement sought to exempt the defendant from liability for negligence, whatever its nature, which should be involved in the management of its railway.

Such negligence might be manifested in many ways—as, in the use of insufficient or defective machinery, in the employment of careless or incompetent train men, or in having an insufficient number of trainmen,—and was necessarily of a kind to affect the business of defendant as a common carrier. The tendency of the agreement was to make the defendant less diligent, in keeping its locomotive engines in good order, in adopting improvements to prevent the escape of fire, and in selecting its employees, than it would otherwise have been, and thus to expose, not only the property of Griswold, but all other property of a com-

bustible kind located upon its grounds, to dangers which reasonable care on its part would have prevented. The tendency of the agreement is more clearly seen when the probable aggregate effect of such agreements, entered into between defendant and all the tenants on its right of way and depot grounds in the state, is considered. To keep in good order the machinery and appurtenances of a railway, and to operate it in the manner which reasonable prudence demands, involves the expenditure of large sums of money, and the constant exercise of skill and care by railroad employees. Whatever tends to lessen the degree of care used in operating a railway is to that extent inimical to public interest, and contrary to public policy. Combustible property on the depot and right of way grounds of a railway company is of necessity more exposed to danger from fire caused by operating the railway than property outside of their limits; and if it can, by agreement, protect itself against liability for negligently destroying the property on its grounds, the common' experience of mankind, as applied to other matters, teaches us that the natural effect of such an agreement is to lessen the care and diligence the railway company will use to prevent such negligence and the consequent loss. It follows that each tenant is interested in the agreement of every other tenant on the same line or division of railway, and that the people who store property in the buildings of such tenants, or who are concerned in grain, coal, lumber, and other articles which are received in, or delivered from, such buildings, are also interested in the agreements.

It does not seem to me that the law which governs ordinary contracts of insurance is applicable to this case. In such contracts the property owner is never, in terms, insured against the consequences of his own negligence. On the contrary, great care is taken to

guard against and prevent negligence on his part. Insurance to the full value of the property is not given, and all inducement to negligence on his part is withheld. If loss result from his negligence, as a rule, he and the insurance company, only, are affected, his negligence not being of a character to affect the public. I am not aware that an agreement to insure a person against the consequences of his own negligence, the natural and probable effect of which would be to encourage such negligence to the danger and prejudice of others, is sustained by the courts. It is true that the public has no interest in the damages in controversy in this action, but it had an interest in the agreement in question so far as it tended to induce negligence on the part of defendant in operating its railway; and as negligence of that kind was the natural and probable effect of the agreement and as the agreement is not separable, it would seem to follow that it should be held void. This conclusion is not only in entire harmony with the authorities cited in the opinion of the majority, but, as it seems to me, is required by them, as well as by the authorities cited in this dissent.

Whether the defendant owed to the public any duty in regard to its own buildings, whether the defendant had any insurable interest in the property of Griswold which was destroyed, and whether the insurance companies are entitled to recover the amounts they have paid to Griswold, are questions which do not appear to me to be so presented as to make it proper for us to determine them on this appeal, and in regard to them I express no opinion.

KINNE, J., concurs in the dissenting opinion.