FRANK SEYMOUR, plaintiff, v. CHICAGO AND NORTHWESTERN RAILWAY COMPANY, defendants.

CHICAGO AND NORTHWESTERN RAILWAY COMPANY, appellant-cross-petitioner, v. CAMERON JOYCE AND COMPANY, appellee-defendant to cross-petition.

No. 50819.

(Reported in 124 N.W.2d 157)

OCTOBER 15, 1963.

Sifford & Wadden, of Sioux City, and Davis, Huebner, Johnson, Burt & Fulton, of Des Moines, for appellant.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, for appellee.

THOMPSON, J.—The original plaintiff, Frank Seymour, was injured by a collision between his automobile and a train of the Chicago and Northwestern Railway Company at an intersection of the railroad right-of-way and a roadway in the town of Sloan, on May 2, 1959. Seymour brought an action against both the railway company and Cameron Joyce and Company to recover

for his damages alleged to have been sustained in the collision. He is not involved in the present litigation. The railway company, which cross-petitioned against Cameron Joyce and Company, will be hereinafter referred to as the plaintiff, and Cameron Joyce and Company as the defendant.

Cameron Joyce and Company is a paving contractor and shortly before the date of the accident was engaged in paving construction in the neighborhood of Sloan. It desired certain facilities for handling supplies to be used in its business; and on April 20 it entered into a contract, known as a licensing agreement, with the railway company. It is the proper construction of this contract which we must determine on this appeal. The case was tried to the court without a jury, and resulted in a judgment dismissing the cross-petition. The cross-petitioner plaintiff appeals.

I. At the outset it is necessary to decide the effect of the findings of fact of the trial court. These, if supported by substantial evidence, are ordinarily conclusive upon the appellate court. However, we find the rule of no value in determining the issues here, because there is no real conflict in the evidence, and as we view the case no conflicting inferences which may be drawn. The case resolves itself into questions of law, depending upon the proper interpretation of the licensing agreement.

II. After Seymour's action was instituted and had been in part tried, the railway company made a settlement with him, paying him $10,000. This was on May 15, 1961. Thereafter, on December 8, 1961, Cameron Joyce and Company made settlement with him for the sum of $3000. This left the cross-petition and the answer denying liability thereon for determination, and it is the matter involved in this appeal.

Cross-petitioner plaintiff's case is bottomed upon paragraph 5 of the licensing agreement, which is set out herewith. "Fifth. It is understood by the Licensee that said facility is subject to and may increase the dangers and hazards of the operation of the railroad of the Railway Company, and that this license is subject to all risks thereof. Therefore, the Licensee assumes and agrees to pay for all loss or damage to property whatsoever, and injury to or death of any person, or persons whomsoever, in-

cluding all costs and expenses incident thereto, however arising from or in connection with the existence, construction, maintenance, repair, renewal, reconstruction, operation, use or removal of said facility, or any defect therein or failure thereof, or the failure of the Licensee to abide by or comply with any of the terms or conditions of this license; and the Licensee forever indemnifies the Railway Company against and agrees to save it harmless from any and all claims, demands, lawsuits or liability for any such loss, damage, injury and death, costs and expenses, even though the operation of the Railway Company's railroad may have caused or contributed thereto."

The trial court decided the case by holding first, that there was no legal liability of the railway company to Seymour, and so its settlement with him was a gratuitous payment and the company had failed to establish any legal claim of Seymour which it was bound to settle and consequently it could not hold the defendant to any liability over; and second, that the injury to Seymour did not result out of the use or operation of the facility provided for in the licensing agreement. We shall discuss these questions in reverse order.

III. The railroad right-of-way ran in a generally north-and-south direction, and carried three tracks. The east track was known as a passing track, the center was the main line, and the west track, known as the "house track", is not involved in this suit. The property licensed to the defendant was located east of and adjacent to the passing track and north of the roadway on which Seymour was traveling at the time of the accident. The facility installed by the defendant under the agreement consisted of an under-track cement loading device, a cement hopper, an under-track loading device for sand and gravel and an aggregate hopper. These were serviced by the railway company bringing in its cars the material to be processed and used by the defendant in connection with its paving operations. The under-track cement loading device was located 150 feet north of the center line of the roadway, and the cement hopper 118 feet north.

On May 2, 1959, the date of the accident, there were a number of cars spotted on the passing track in connection with the

defendant's operations. Two of these, described as cement hopper cars, were south of the cement hopper, the one closest to the roadway being 51 feet north of the center line, and so, assuming that Seymour was traveling on the right-hand side, some few feet closer to him as he approached the intersection. If the cars had not been located on the passing track he would have had a view, when 100 feet from the intersection, of some 1420 feet, and at 75 feet distant of about 3900 feet, to the north. Seymour approached from the east, and his contention was that his view was so obstructed by the two cars nearest the crossing, and others farther north, that he did not see the train approaching. There is evidence the train whistle was sounded at some distance from the crossing, but Seymour said he did not hear it. The train was traveling about 65 miles per hour and did not slow as it approached the crossing. The engineer said he could not see Seymour. There is evidence that at other times, before the installation of the defendant's facility, cars had been spotted on the east track close to the crossing so that the view was obscured.

The question for determination at this point is whether the location of the cars on the east or passing track, which were admittedly placed there for the use of the defendant in its operations, was such a use of the facility as was contemplated by the licensing agreement in so far as a proper construction shows the intent of the parties that the defendant agreed to hold the plaintiff harmless from any damage resulting therefrom. The trial court thought that since the accident occurred on the intersection and that was not part of the defendant's facility, it was not within the terms of the contract. In this we think the court erred.

The language of the agreement is broad. It is not seriously contended that the plaintiff did not have the right to make the agreement, even to the point of holding the defendant liable if the operation of the railroad caused or contributed thereto. The plaintiff was not acting as a common carrier in furnishing or leasing the defendant ground for installation of its equipment, and so was free to contract as it did. Chicago & Northwestern Railway Co. v. Kramme, 244 Iowa 944, 951, 59 N.W.2d 204, 208. So we take it as it reads, and look for the

intent of the parties as shown by the language used. We find it so clear that there is in fact no occasion for construction. Paragraph 5 begins by stating that the licensee, the defendant, understands that the facility may increase the hazards of the operation of plaintiff's railroad. So the licensee agrees to pay all damages that may be incurred "however arising from or in connection with the existence, construction, maintenance, * * *, *operation, use* or removal of said facility * * *." (Italics supplied.) Surely the placing of the cars on the passing track for the purpose of bringing in material to be unloaded by the defendant at its installations, and thereafter used in its construction operations, was something that arose "from or in connection with" the existence, operation and use of said facility. It is not important who placed the cars there. They were there in connection with the operation and use of the facility, and they increased the hazards of railroading.

We are cited to no case directly in point on the facts, and our research has found none. In Chicago & Northwestern Railway Co. v. Kramme, supra, the agreement provided for the building of a private crossing over the railway company's tracks, and the injury occurred on the crossing. The language of the contract in the instant case is broader than that considered in Kramme, in that it contains the words "however arising from or in connection with" the operation or use of the facility, which were not included in the Kramme contract, and which we think are of great importance.

The words "in connection with" are broad, and have been so construed by the courts. A significant analysis of the term is found in Jacksonville Terminal Co. v. Railway Express Agency, Inc., C. C. A., 5th Cir., 296 F.2d 256, 260. There a certain trackage area had been leased by the terminal company to the express agency, with the provision that the terminal company should construct and maintain the tracks, but the express company agreed to indemnify and save harmless the terminal company from all charges, expenses, suits, judgments, loss or damage "arising by reason of or in connection with occupation and use of the premises of the Terminal Company by the Express Company." An employee of the terminal company was injured

while making up a train for shipment of the express company's items, but because of a defective and rotten crosstie. The Fifth Circuit Court of Appeals held that it appeared as a matter of law that the injury was sustained in connection with the express company's business, and the trial court should have so found; that it was error to submit the question to the jury. It said: "On the other hand, the court minimized the significance of the phrase 'in connection with', which does not ordinarily refer to causal connection; and there is no indication that the parties intended this phrase to convey other than its ordinary meaning in the context of the indemnity clause." It cited the construction put upon the phrase by the Florida Supreme Court in J. Ray Arnold Lumber Corporation of Olustee v. Richardson, 105 Fla. 204, 141 So. 133, 135. See also Daire v. Southern Farm Bureau Cas. Ins. Co., La. App., 143 So.2d 389, 391, Chrysler Motors of California v. Royal Indemnity Co., 76 Cal. App.2d 785, 174 P.2d 318, 322, and, generally, 20A Words and Phrases, "In Connection With", pages 332 to 334 inc., and 1963 pocket parts.

■ It is inescapable that the injuries sustained here arose because of something "in connection with" the use and operation of the defendant's business. The cars were placed on the track because of that use and operation, and clearly in connection therewith. As pointed out in Jacksonville Terminal Co. v. Railway Express Agency, Inc., supra, and in its language, "* * * the trial court should have itself concluded that Johnson's injury arose 'in connection with' REA's occupation and use of the premises. The submission of this question of contract construction to the jury was therefore unwarranted." Loc. cit. 296 F.2d 260.

IV. The defendant strenuously contends that the case was tried upon a theory of indemnity rather than absolute liability, and so it was incumbent upon the plaintiff to prove its liability to Seymour before it could hold Cameron Joyce and Company. The trial court adopted this view; its opinion repeatedly asserts the action is one for indemnity, and its holding that no recovery may be had because of failure to show such liability permits no other conclusion. Again we are unable to agree. It is true that

paragraph 4 of the cross-petition says "Cameron Joyce and Company are bound to indemnify the cross-petitioner for sums paid by it to the plaintiff [Seymour] as a result of the action herein, and for all costs and expenses incurred in connection with the action herein." Defendant also points to the plaintiff's motion for directed verdict, in which, however, it said: "* * * under the present state of the record reasonable minds could not disagree on the question of whether or not the loss and damage to the property and injury to the plaintiff Seymour and the costs and expenses incident thereto have arisen from and in connection with the existence, * * * operation, use or removal of said facility, *and that under the terms of the license agreement herein reasonable men could not differ as to the question of whether or not the licensee is obligated to indemnify the Railway Company* and to pay for the said loss and damage to the plaintiff and to the Railway Company * * *."

The portion of the motion which we have italicized is relied upon by the defendant as a further showing that the plaintiff railway company bases its case solely upon a claim for indemnity.

The contention may be shortly answered. The cross-petition sets out the licensing agreement, and, after pleading the settlement with Seymour and the sum paid him, also says, in the same paragraph 5, that certain sums were expended in defending the Seymour litigation, in the amount of $10,182.74; and "that both sums are reimbursable under the License Agreement marked Exhibit 'A'."

Chicago & Northwestern Railway Co. v. Kramme, supra, dealt with an identical contention. We quote:

"Defendants suggest in argument that plaintiff is precluded by the language of its petition from contending the agreement is not strictly one of indemnity. The argument is based on the allegation of the petition 'That defendants, under the terms of the indemnifying provisions of the license agreement * * * are obligated to repay plaintiff $2661.62.'

"We cannot accept defendants' suggestion. To do so would be to construe the petition with too much strictness and technicality. The license agreement, copy of which is attached to the

petition, fills five pages of the record and covers several matters not referred to herein. The entire paragraph of the agreement heretofore quoted is set out in the petition proper. The petition as a whole does not indicate an intention to rely solely on the provision of the agreement merely for indemnity rather than upon the entire paragraph. The language of the petition on which defendants rely may well have been intended as a reference to the whole paragraph." Loc. cit. 244 Iowa 951, 59 N.W.2d 208.

More apt language to answer the defendant's argument on this point could hardly be conceived, and we adopt it here. The plaintiff's case was based on a contract liability making an absolute promise to pay, and the trial court erred in holding otherwise.

V. This leaves only the question of what sums are due the plaintiff under the contract. The plaintiff is entitled to recover only such as were reasonable in amount. Chicago & Northwestern Railway Co. v. Kramme, supra, loc. cit. 244 Iowa 950, 59 N.W.2d 207; Chicago, R. I. & P. R. Co. v. Dobry Flour Mills, Inc., C. C. A., 10th Cir., 211 F.2d 785, 788. The trial court, having found plaintiff entitled to recover nothing, made no determination as to reasonableness.

██ ██ However, so far as the payment of $10,000 to Seymour in settlement of his claim is concerned, we think that sum sufficiently established and the plaintiff is entitled to judgment therefor without further proceedings. Hawkeye-Security Insurance Co. v. Lowe Construction Co., 251 Iowa 27, 35, 99 N.W.2d 421, 427, holds that a settlement may be made and contribution required from a concurrent tort-feasor if the settlor as a result of its investigation believes the settlement is fair, reasonable and just. By stipulation in the case at bar it appears that after the plaintiff had paid the sum of $10,000 to Seymour, the defendant paid him $3000 in settlement of his claim against it. Under the law, the payment by the plaintiff reduced pro tanto any recovery against the defendant. Greiner v. Hicks, 231 Iowa 141, 146, 300 N.W. 727, 729, 730; Bolton v. Ziegler, 111 F. Supp. 516, 531. So the defendant here would have been entitled to have the amount paid by the plaintiff applied to reduce any judgment

against it. By making a further payment it must have conceded the reasonableness and good faith of the plaintiff's payment; in other words, that $13,000 was not an unreasonable amount for settlement of Seymour's claim.

However, as to the sums claimed by the plaintiff for attorney fees, witness fees, costs of investigation and other expenses, there is no stipulation or finding as to their reasonableness. Accordingly the case must be remanded to the trial court, with directions to enter judgment for the cross-petitioner plaintiff against the cross-petition defendant in the sum of $10,000, with interest and costs; and for such further sums as the court may determine to have been reasonably expended by the plaintiff in investigation and defense of the claim and suit of Frank Seymour.—Reversed and remanded, with directions.

All JUSTICES concur.