FARMERS ELEVATOR COMPANY et al., appellees, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, appellant.

No. 52329.

(Reported in 149 N.W.2d 867)

April 4, 1967.

Gamble, Riepe, Martin & Webster, of Des Moines, and Cook, Blair, Balluff & Nagle, of Davenport, for appellant.

Seymore M. Raben, of Davenport, for appellees.

SNELL, J.—This case arose from the damage that resulted when a railroad car being switched by defendant fell into plaintiff's open scale pit.

The case was at law tried to the court. From a judgment for plaintiff, defendant railroad company has appealed.

The factual situation appears without material controversy.

Although by subrogation Farmers Elevator Mutual Insurance Company is the real party in interest as plaintiff we will for convenience refer to Farmers Elevator Company as plaintiff. Chicago, Rock Island and Pacific Railroad Company is defendant. The contracts hereinafter referred to were executed between plaintiff's predecessor in interest and defendant, but that fact is not material here.

Farmers Elevator Company is the lessee under two leases with defendant railroad company. The first lease covers land adjacent to the railroad track in Walcott, Iowa. This property is approximately 8.5 feet north of defendant's spur track on the south. On this property Farmers Elevator Company has a grain elevator and office.

Plaintiff buys and sells grain, feed, seed, merchandise and coal. It has two large elevators, one track scale and the necessary buildings for storage.

The second lease (known as the Under Spur Track Scale Lease) is dated September 30, 1912, and is between the predecessor of Farmers Elevator Company and defendant. The lease covers a tract 15' x 44'. It is contiguous to the south line of the property described in the first lease. Under the terms of this lease the original lessee was granted permission to construct and maintain a track scale to be located directly beneath an east-west

spur track. The scale was installed. The scale pit was constructed with four concrete walls and with an opening on its north side so that the weighing arm of the scale could and did extend into the elevator building where the actual weighing was performed. The top of the scale pit was covered with planks and over these planks there was a dead rail built to railroad specifications so that the weight of the engines or cars would not rest on the track scales. The Under Spur Track Scale Lease contained two paragraphs excluding liability on the part of the railroad.

On November 1, 1956, plaintiff and defendant executed an "Adoption Agreement" wherein the parties, after specifically referring to the September 30, 1912, agreement agreed to be bound thereby.

Plaintiff used the scales to weigh boxcars and their contents in and out of the elevator. For approximately two months prior to December 11, 1962, the scales had been under repair and were inoperative, and defendant had been notified and had knowledge of this fact. The scale pit was open. On December 11, 1962, a boxcar and a tank car by a running or flying switch were switched onto the spur track (neither of said cars being destined to Farmers Elevator Company) by defendant at a point approximately 700 to 800 feet away from the scale pit. There was another switching track. The engineer in charge of the locomotive knew that the scale pit was open and the spur trackage not available. The cars were moving free from the engine at from 5 to 7 miles per hour. One of the cars rolled into the open scale pit causing damage to the scale mechanism. The amount of damage was stipulated. The trial court found defendant negligent under the doctrine of res ipsa loquitur and entered judgment against defendant.

Defendant's main defense is based on the exculpatory provisions of the scale lease.

Paragraph "Third" provides that lessee shall hold lessor harmless from any claims for damage to the scales by reason of the operation of engines, cars or trains over the same, and will make no claims against lessor for any such damage. Paragraph "Fourth" provides that lessee releases lessor from all liability for

loss or damage by reason of injury to property sustained by lessee when arising from the occupancy, use or operation of the leased premises and the scales located thereon "and irrespective of whether any act or neglect * * * of the first party [the railroad], or any of its employees, shall have caused or contributed thereto, and the second party shall and will at all times hereafter indemnify and save harmless the first party from and against all such liability for loss and damage."

I. At the trial plaintiff read into the record the discovery deposition of H. C. Calvert, defendant's employee and engineer operating the locomotive at the time of the accident. Defendant objected on the ground that plaintiff had not complied with rule 144, Rules of Civil Procedure. The objection was overruled without statement of the reason and defendant claims error.

Rule 144, Rules of Civil Procedure, provides:

"Any part of a deposition, so far as admissible under the rules of evidence, may be used upon the trial or * * * against any party who appeared when it was taken, or stipulated therefor, or had due notice thereof, * * *

"(c) For any purpose, if the court finds that the offeror was unable to procure deponent's presence at the trial by subpoena; or that deponent is out of the state or more than one hundred miles distant from the trial, and such absence was not procured by the offeror * * *."

Mr. Calvert at the time of the accident and at the time of trial was employed by defendant as a locomotive engineer. He was in charge of the engine that by a flying switch sent the boxcar and tank car onto the spur track and ultimately into the scale pit. After disengaging the cars the brakeman riding the cars rather than the engineer was in control (if anyone was) of the cars. However, it was the engine controlled by the engineer that provided the force causing the accident. The engineer saw what happened. He had worked in the switch area for many years and was familiar with the switching facilities. He lived in Illinois and at the time of trial was in Illinois. It is safe to assume that as an employee of defendant Mr. Calvert's personal attendance at time of trial could have been obtained by defend-

ant. He had been produced for the deposition taken by stipulation. He was not there at the trial. He was out of the state and not subject to subpoena by plaintiff. The propriety of the use of his deposition was evident. The fact that the court in ruling on the objection did not elaborate on the basis of the ruling is not important.

There was no error.

II. Findings of fact by the trial court if supported by substantial evidence are ordinarily conclusive upon the appellate court. This rule, however, is of little value here because there is little conflict in the evidence. The case resolves itself into questions of law and interpretation of the licensing agreement. Seymour v. Chicago & Northwestern Railway Co., 255 Iowa 780, 782, 124 N.W.2d 157.

█ █ III. It is not contrary to public policy, where the public interest or some statutory provision is not involved, for parties to a lease to agree that one of them is relieved from liability for negligence. However, where a party claims contract relief from his own negligence, particularly active negligence, the provisions are strictly construed against him. The intent must be clearly expressed. The problems are extensively considered and authorities reviewed in Sears, Roebuck and Co., Inc. v. Poling, 248 Iowa 582, 81 N.W.2d 462. That was a fire case as distinguished from a railroad case but the pronouncements concerning exculpatory provisions are appropriate. We quoted with approval from an annotation in 175 A. L. R. 8, page 89, as follows: " 'With but few exceptions, these clauses have not immunized the landlord from responsibility for his acts of affirmative negligence.' "

█ IV. When not acting as a common carrier a railway company may make contracts with exculpatory and indemnity provisions. Seymour v. Chicago & Northwestern Railway Co., supra, loc. cit. 784, and authorities cited therein.

It should be kept in mind that in Seymour the lease contract contemplated and the installed facility actually created additional hazards in the operation of the railroad. No comparable hazard appears here.

V. Section 481.1, Code of Iowa, refers to "any building used for receiving, storing, or manufacturing any article of commerce transported or to be transported, situated on the railroad right of way or any land owned or controlled by the railroad company for railroad purposes."

Section 481.2 provides:

"Destruction of buildings. In the event that any building referred to in section 481.1, situated on the right of way or other land of a railroad company used for railway purposes, shall be injured or destroyed by the negligence of the railroad company, or the servants or agents thereof in the conduct of the business of such company, the railroad company causing such injury or destruction shall be liable therefor to the same extent as if such building used for said purposes was not situated on the right of way or other land of such railroad company used for railway purposes, any provision in any lease or contract to the contrary notwithstanding."

 The scale pit in question was a building within the meaning of the statute. It was a permanent structure with four walls and a roof. It housed permanently installed equipment used in trade and business. The word "building" is comprehensive, generic, and in its use depends for its meaning upon the facts of the case. For situations in which the word has been applied see 12 C. J. S., Building, pages 378–384; 13 Am. Jur.2d, Buildings, section 1; 5 Words and Phrases, page 870 and pocket parts.

VI. We adopt as fully supported by the record the following from the trial court's findings and conclusions.

 "It is obvious from the wording of section 481.2 that the scale pit and scale mechanism can qualify as a building and still not be within the purview of said section. It is necessary that they be used for receiving, storing or manufacturing an article of commerce transported or to be transported. In order to properly determine whether or not this requirement is met, it is necessary to consider the use made of the scales and the use made of the elevator itself and what connection there is, if any, between the uses of the two.

"A grain elevator is by common knowledge used for the re-

ceiving, storing and handling of grain. Part of its function is to ship the grain to other places after the same has been received. Weighing of the grain as it is brought to the elevator and as it is being shipped out is a necessary step in putting the grain in and in taking it out of the elevator. In this case, the testimony of Mr. Hendricksen, manager of plaintiff elevator company is that the scales were used for weighing boxcars and loads, that the weigh beams came underground from the scales pit into the elevator and the actual weighing was done inside the elevator building. The testimony of Mr. Leech, plant superintendent of Pillsbury Co. at Walcott, Iowa, is that Pillsbury leased the facilities at Walcott from Farmers Elevator Co. and that the scales were used by Pillsbury Co. to weigh cars in and out; that he or his assistant would weigh the cars on the scales and that the defendant railroad company would adopt their weights. * * *

"It is the opinion of the court that the weighing of the produce is part of the process of receiving the grain into the elevator and therefore the scales installation was used in receiving an article of commerce transported or to be transported."

In 1894 prior to enactment of what is now section 481.2, quoted supra, it was held by a divided court in Griswold v. Illinois Central Railway Co., 90 Iowa 265, 57 N.W. 843, 24 L. R. A. 647, that a stipulation in a contract in which a railroad company permits a building to be erected on its right-of-way wherein business is to be done with the public, that the company shall not be liable for fire negligently communicated by it to such building, does not contravene public policy.

For this proposition the case has been frequently cited. The case also holds, though said building is to be used for making shipments over defendant's road, and for purposes, ultimately, beneficial to it as a common carrier, said stipulation is not made in its capacity as a common carrier, and is not within the then effective statutory provision prohibiting such carrier from exempting itself by contract from a liability which would exist without such contract.

This holding apparently met with little public enthusiasm because a new statute effective July 4, 1913, was enacted.

In 1920 our court in Aetna Insurance Co. v. Chicago Great Western Railroad Co., 190 Iowa 487, 490, 180 N.W. 649, 16 A. L. R. 249, commented:

"The evident design of the lawmakers was to eliminate the ruling of a bare majority of the court in Griswold v. Illinois Cent. Ry. Co., 90 Iowa 265, and thereby remove any existing barriers to requiring that railroad companies answer for the consequences of their own negligence. * * *."

In 1921 in Ruff Drug Co. v. Western Iowa Co., 191 Iowa 1035, 1041, 181 N.W. 408, 15 A. L. R. 962, it is said:

"A careful analysis of the court's decision in each of the cited cases reveals that the clause construed either specifically or definitely exempted the landlord from liability for damages resulting from certain designated causes, or else the lease involved was a lease of a certain portion of the right of way of a railroad for a nominal consideration, for the erection of an elevator or other building of similar character and use. In the latter cases, the exemption provided was from liability for damages resulting from fires caused by the negligence of the Company's servants. In none of these cases was the question of the liability of the landlord for damages caused by its negligence in making repairs upon leased premises involved. * * *."

As noted in Division III, supra, courts have been reluctant to grant relief from responsibility for acts of affirmative negligence. Exculpatory provisions have been held ineffective where there was an affirmative act of negligence not incident to the lessee's use of the facility.

In Standard Oil Co. v. Payne, 220 Mich. 663, 190 N.W. 769, an accident occurred in connection with a switching operation when the engineer failed to observe an open switch and as a result there was a collision with a switching train.

The court held the railroad company liable and the exemption provision affording no relief unless it appeared that the use of the sidetracks for the shipper's benefit was the proximate cause of the loss. Where the loss was not proximately caused by the use of the siding for the industry's benefit but by an intervening cause, that is, the negligence of the engineer of the train,

the exemption provision would not relieve the railroad company.

In the case at bar the damage was caused by the intervening affirmative act of defendant's engineer in switching two cars onto an out-of-operation spur track. The damage was not caused by any railroad operation for plaintiff's benefit.

The trend in judicial thinking as to what constitutes a railroad purpose as distinguished from a private or nonrailroad use is indicated in McSweyn v. Inter-Urban Railway Co., 256 Iowa 1140, 1147, 1148, 1149, 130 N.W.2d 445. In that case it was claimed that defendant was restricted by its title to the use of "said land for electric railway only." Power for the movement of cars and trains had been changed from overhead electric trolley wires to electric power from diesel motors in the locomotives. A spur track for the spotting, storage and ultimate unloading of a customer's oil tank cars was built and in use. The various uses constituting "railroad purposes" were analyzed. We noted that railroad purposes include such a variety of uses as changes in circumstances may bring about. It was also noted that operation of businesses comparable to the case at bar were incidental to railroad purposes.

The case involved a restrictive covenant rather than an exculpatory contract but the decision indicates judicial thinking as to what constitutes railroad business.

In the case at bar the scale was a convenience to the railroad as well as to plaintiff. The railroad accepted the scale weights. It is not claimed that permission to install the scale was compulsory but it was incidental and beneficial to the railroad as a common carrier. It is not a situation within the purview of Division IV, supra.

When plaintiff's damage resulted from the active negligence of defendant's employee in no way connected with plaintiff's private interest in the scale we think the statute, section 481.2, quoted supra, controls.

The statute provides for liability for negligence "in the conduct of the business of such company" notwithstanding any lease or contract to the contrary.

The damage here resulted from negligence in the switching operation of defendant's business. It was within the express provisions of the statute.

Since the pronouncement in Division II of the Griswold opinion the law has been changed. To the extent that it might indicate that the case at bar is not controlled by our present statute it is no longer applicable.

VII. In Sears, Roebuck and Co., Inc. v. Poling, supra, 248 Iowa loc. cit. 588, not a railroad case, after citing Griswold and other authorities this appears:

"While defendants concede it is not ordinarily contrary to public policy for parties to contract for freedom from liability for negligence, they properly remind us that the issue here is whether this lease contains such a contract."

As stated in Division III, supra, where a party claims contract relief from his own active negligence the contract provisions are strictly construed against him. The intent must be clearly expressed.

The exculpatory provisions of the lease involved here are broad in relation to the operation of the track scales, but they do not cover the general switching operations of defendant's trains. They relieve defendant from liability for damage "to said scales by reason of the operation of engines, cars or trains over the same * * * or by reason of the placing cars or engines on said track scales, or the removal of same therefrom by the first party."

The agreement also releases defendant from liability "arising from, or directly or indirectly due to the occupancy, use or operation by the second party, of the said premises, and the track scales located thereon, and irrespective of whether any act or neglect of the second party, or of the employes of the second party, or of the first party, or any of its employes, shall have caused or contributed thereto, * * *."

If we are to construe the provisions strictly against defendant, as we must, it is clear that the accident did not occur under any of the conditions outlined in the lease,

The cars were not being operated over the scale. They were not being placed on or removed from the track scales. The accident did not arise from any occupancy, use or operation of the scales. The contrary appears. The scales were out of operation. The pit was open. The track over the scale could not be used. Defendant had been notified and the engineer knew of the situation. Sending two loaded cars running loose on an out of operation spur track to an open scale pit is not within the specific provisions of the lease. Neither is such a situation one that could reasonably have been contemplated by the parties to the lease.

VIII. In its reply brief and argument defendant for the first time says: "If the court holds that the under spur track scale lease agreement does violate section 481.2, the said section is unconstitutional by reason of Article 1, section 10, Constitution of the United States and Article 1, section 10, Constitution of the State of Iowa."

Defendant says there was an understanding at time of trial and a written stipulation amending the record on appeal that defendant "was further deemed to have alleged *any contract, statutory or constitutional defenses* to the allegations contained in the said Amendment to Petition as the said defendant-appellant should desire to urge upon the Court." (Emphasis added by defendant.)

There is no record that any constitutional question was ever presented to or considered by the trial court. It has not been argued here.

In Verschoor v. Miller, 259 Iowa 170, 176, 143 N.W.2d 385, 389, we said:

"This court has held so many times a question not presented to and not passed upon by the trial court cannot be raised or reviewed on appeal that citation of decisions is unnecessary." (Citations)

There is no constitutional question properly before us.

IX. We find no reversible error. The case is—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.