**EMPLOYERS MUTUAL CASUALTY COMPANY, Subrogee of Iowa Limestone Company, and R.D. Stewart, Inc., Appellee,**

v.

**CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Appellant.**

No. 93–202.

Supreme Court of Iowa.

Sept. 21, 1994.

Rehearing Denied Oct. 17, 1994.

Bruce Johnson of Gamble & Davis, A P.C., Des Moines, for appellant.

Sharon Soorholtz Greer and Joel Greer of Cartwright, Druker & Ryden, Marshalltown, and E. Frederick Davison and Jeffrey R. Learned of Denenberg, Tuffley & Jamieson, P.C., Grand Rapids, MI, for appellee.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

This appeal stems from a subrogation action brought by plaintiff Employers Mutual Casualty Company to recover sums paid to its insureds as a result of negligence by employees of defendant Chicago & North Western Transportation Company. From a verdict for the insurer, the railroad appeals. We reverse and remand.

## I. Facts and Proceedings.

In March 1990, a railroad engine owned by Chicago and North Western Transportation Company (CNW) was operating on track owned by CNW near the Iowa Limestone plant in Alden, Iowa. The engine negligently pushed railroad cars into a crane owned by R.D. Stewart, Inc., which in turn struck Iowa Limestone's overhead conveyor. Employers Mutual Casualty Company (Employers) insured both R.D. Stewart, Inc. and Iowa Limestone. As a result of the collision, Employers paid these companies insurance proceeds in excess of $250,000. It then sued CNW as the subrogee of its insureds.

In the subrogation action CNW moved for summary judgment, claiming its licensing agreement with Iowa Limestone concerning the overhead conveyor contains an indemnification provision shielding it from liability for its own negligence. The district court over-ruled the motion on two grounds. First it found the indemnification clause inapplicable where the conveyor's use, existence or operation was not a proximate cause of the damages. Second it ruled that any attempt by the railroad to insulate itself from liability would be invalidated by Iowa Code section 327D.186 (1991). The case proceeded to trial.

At trial the district court sustained Employers' motion to exclude the licensing agreement from evidence. Its ruling rested on the same grounds cited for denying CNW summary judgment. A jury returned a verdict apportioning fault as follows: sixty-five percent to CNW, twenty percent to Iowa Limestone, and fifteen percent to Stewart. After denying CNW's posttrial motions, the court entered judgment against it for $157,080.33 plus interest. This appeal followed.

## II. Issues and Scope of Review on Appeal.

CNW cites two errors on appeal. First it claims the court erroneously interpreted the licensing agreement for the overhead conveyor. Second it asserts the court erred in its application of Iowa Code section 327D.186 to the facts of this case.

Our review is for the correction of errors at law. Iowa R.App.P. 4.

A. Applicability of indemnification provision. Iowa Limestone constructed its overhead conveyor pursuant to a licensing agreement with CNW. The agreement permitted Iowa Limestone to "construct, maintain, and use car loading facilities ... upon the property and over and adjacent to tracks of" CNW. The parties' controversy centers on the agreement's indemnity clause. Its pertinent parts read:

It is understood by the Licensee that said facility is subject to and may increase the dangers and hazards of the operation of the railroad of the Railway Company, and that this license is subject to all risks thereof. Therefore, and as a material consideration to the Railway Company for entering into this license and without which the Railway Company will not enter into same, the Licensee agrees to assume and

pay for all loss or damage to property whatsoever ... including costs and expenses incident thereto, however arising from or in connection with the existence, construction, maintenance, repair, renewal, reconstruction, operation, use or removal of said facility ... and the Licensee forever indemnifies the Railway Company against and agrees to save it harmless from any and all claims, demands, lawsuits or liability for any such loss, damage, injury and death, costs and expenses, even though the operation of the Railway Company's railroad may have caused or contributed thereto.

At issue is the scope of the phrase "arising from or in connection with" the conveyor's existence and operation. The district court, reading the phrase narrowly, ruled as a matter of law that this contractual provision failed to insulate CNW from liability because the overhead conveyor was not the *source* of any damages. The collision, the court found, was related to construction of a large storage tank, not the conveyor. The conveyor's only connection to the mishap was its misfortune of being struck by the crane that was working on the tank.

On appeal CNW contends the court should have construed the agreement more broadly. It was error, the railroad argues, for the court to infer from the agreement's terms anything less than "an absolute promise to pay."

We note preliminarily that contract interpretation—the process of determining the meaning of words used—presents a question of law for the court unless the meaning turns on extrinsic evidence or a choice among reasonable inferences. *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 107–08 (Iowa 1981). No extrinsic evidence bearing on the phrase "in connection with" was submitted to the court. Thus the court was correct in resolving the issue as a matter of law based upon its own examination of the use of the words in the licensing agreement. *Id.* at 108; *Seymour v. Chicago & N.W. Ry.*, 255 Iowa 780, 782, 124 N.W.2d 157, 159 (1963).

We are convinced, however, that the court's focus on causation led it to misinterpret the agreement's scope. Used in the context of this case, the phrase "in connection with" has ordinarily been interpreted broadly, not narrowly. *Seymour*, 255 Iowa at 786, 124 N.W.2d at 161. Such an interpretation is in keeping with the expressed purpose of the license: to shield the railroad from the increased risk associated with the construction and use of facilities in close proximity to the tracks. Without the protection such a hold-harmless clause provides, there would be little reason for the railroad to permit Iowa Limestone to use the right-of-way adjoining its property. *See Chicago & N.W. Ry. v. Kramme*, 244 Iowa 944, 951, 59 N.W.2d 204, 208 (1953) (railroad entitled "to impose such conditions as it chose upon granting permission to use its property").

Although the record supports the court's finding that the conveyor was not the *source* of the collision, we do not believe causation is the test for application of the clause. By its very existence in close proximity to the tracks, the overhead conveyor presented a hazard. The record reveals that its location restricted the movement of the crane. The crane was operating on Iowa Limestone equipment nearby. Forced to position itself on adjoining tracks to avoid touching the conveyor, the crane ultimately ended up in the path of the moving railroad cars. Had its placement not been restricted by the existence of the conveyor, its collision with the rail cars—resulting ultimately in damage to the conveyor—would not have occurred.

■ It is true that agreements relieving an indemnitee from its own negligence are looked on with some disfavor. *Herter v. Ringland–Johnson–Crowley Co.*, 492 N.W.2d 672, 674 (Iowa 1992). They are enforceable, however, when the contractual language is clear and unambiguous. *Id.* The agreement before us meets that standard. Just as this court noted in *Seymour*, when interpreting the identical clause, it is "inescapable" that the injuries sustained here arose in connection with Iowa Limestone's occupation and use of the premises. *See Seymour*, 255 Iowa at 786, 124 N.W.2d at 161. The court erred in interpreting the licensing agreement otherwise and must be reversed.

III. *Applicability of Iowa Code section 327D.186.*

 The district court also ruled as a matter of law that the indemnity clause violated Iowa Code section 327D.186 and was, therefore, void and unenforceable. CNW argues on appeal that section 327D.186 has no application to an indemnification provision negotiated by a railroad in connection with the lease of its private property.

Iowa Code section 327D.186 states:

Every corporation operating a railway shall be liable for all damages sustained by any person, including employees of such corporation, in consequence of the neglect of the agents, or by any mismanagement of the engineers, or other employees thereof ... when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding.

This section, like all of chapter 327D, applies only to intrastate transportation by for-hire common carriers of persons and property. Iowa Code § 327D.1. A "common carrier" is one who undertakes to transport, indiscriminately, persons and property from one place to another. *Kvalheim v. Horace Mann Life Ins. Co.,* 219 N.W.2d 533, 535 (Iowa 1974). CNW, arguing that it was not acting as a common carrier when it entered into the lease agreement for the overhead conveyor, contends it was free to limit liability for its own negligence. We agree.

 Three factors underlie the long-standing public policy prohibiting common carriers from exempting themselves from liability for their own negligence. First, the law imposes on railroads an absolute duty to transport passengers and freight with care, as well as a duty to provide reasonably safe machinery and appliances for railroad employees. *Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry.,* 70 F. 201, 205 (8th Cir.1895), *aff'd.* 175 U.S. 91, 20 S.Ct. 33, 44 L.Ed. 84 (1899). Second, parties to a transportation contract are not on equal footing because of the monopoly railroad companies enjoy over rail transportation facilities. *Id.* Third, any attempt by railroads to exempt themselves from their absolute duty to transport passengers and freight with care would unreasonably endanger the lives of passengers and employees. *Id.; see also Griswold v. Illinois Cent. R.R.,* 90 Iowa 265, 270, 57 N.W. 843, 846 (1894); 14 Am.Jur.2d *Carriers* § 554 (1964).

The reasons prohibiting such exemption clauses, however, do not apply when the railroad is not acting in its public capacity. 14 Am.Jur.2d *Carriers* § 554 (1964); *see Hartford,* 70 F. at 205; *Griswold,* 90 Iowa at 270, 57 N.W. at 846; *see also* R.M. Perkins, *Judicial Relaxation of the Carrier's Liability— Legislative Restoration of the Liability,* 4 Iowa L.Bull. 86, 92 (1918) (hereinafter Perkins). Unlike a railroad's absolute duty as a common carrier to transport persons and property safely upon payment, a railroad is under no duty to lease or permit others to use its rail property. *Chicago & N.W. Ry. v. Kramme,* 244 Iowa at 951, 59 N.W.2d at 208; *see generally* Annotation, *Validity, Construction, and Effect of Agreement, in Connection with Real–Estate Lease or License by Railroad, for Exemption from Liability or for Indemnification by Lessee or Licensee, for Consequences of Railroad's own Negligence,* 14 A.L.R.3d 446 (1967). In volunteering to do so, therefore, a railroad acts in a private capacity and is as free as any other property owner to impose any condition it wishes and the licensee is willing to accept. *Kramme,* 244 Iowa at 951, 59 N.W.2d at 208; *see also Farmers Elev. Co. v. Chicago, R.I. & P. R.R.,* 260 Iowa 478, 149 N.W.2d 867, 870 (1967); 14 Am.Jur.2d *Carriers* §§ 537, 544 (1964).

Here the contract between CNW and Iowa Limestone was not for the carriage of persons or property, but for Iowa Limestone's lease of CNW's property to build a conveyor over CNW tracks. CNW was under no duty to lease its property to Iowa Limestone. CNW's obligations as a common carrier were therefore not implicated when it entered the lease. *Seymour,* 255 Iowa at 784, 124 N.W.2d at 160. It was free to contract as it did, the provisions of section 327D.186 notwithstanding. *See id.,* 124 N.W.2d at 160; *Griswold,* 90 Iowa at 273, 57 N.W. at 846. *See also* Perkins at 92–93 (statute restricting

railroad's ability to exempt itself from all liability inapplicable to lease by railroad of its right-of-way).

Employers nevertheless argues that section 327D.186 applies because, *at the time of the collision*, CNW was acting as a common carrier. Nothing in our prior cases, however, suggests that a railroad's common carrier status is fixed at the time damage occurs. In general, a contract is entitled to enforcement unless its terms are in contravention of law or public policy. *Baker v. Stewart's Inc.*, 433 N.W.2d 706, 707 (Iowa 1988); *Tschirgi v. Merchants Nat'l Bank*, 253 Iowa 682, 690, 113 N.W.2d 226, 230–31 (1962). CNW lawfully entered the lease agreement and its terms are not contrary to statute or public policy. We therefore hold that the district court erred when it found the indemnity clause void under section 327D.186.

### IV. *Conclusion.*

The district court should have dismissed Employers' subrogation claim against CNW. CNW's licensing agreement with Iowa Limestone clearly obligates Iowa Limestone to assume all loss for damage to its facilities on CNW property, even when those damages are caused by CNW itself. Iowa Code section 327D.186 applies to a railway company's common carrier contracts, not its private leases.

It is axiomatic that the rights of a subrogee are the same as, but no greater than, those of the person for whom the subrogee is substituted. *Bales v. Warren County*, 478 N.W.2d 398, 400 (Iowa 1991); 73 Am.Jur.2d *Subrogation* § 106, at 665–66 (1974). Employers is entitled to no recovery against CNW for that portion of its subrogation claim resting on payments made to Iowa Limestone. We therefore reverse and remand the case to the district court for entry of judgment dismissing that portion of Employers' claim, and reducing its recovery accordingly.

**REVERSED AND REMANDED.**